BRIAN S. NOBLE & others, trustees,[1] *vs.*
JOHN MURPHY, individually & as executor.[2]

No. 90-P-1021.

Norfolk. January 10, 1992. - May 6, 1993.

Present: FINE, JACOBS, & PORADA, JJ.

*Condominiums,* By-laws, Management, Animals. *Real Property,* Condominium, Restrictions. *Practice, Civil,* Attorney's fees. *Animal. Dog.*

A by-law of a condominium trust banning all pets from any housing unit or common area of the condominium, the substance of which was part of the originating documents of the condominium, was a valid restriction under G. L. c. 183A absent any showing that the restriction was wholly arbitrary in its application, in violation of public policy, or that it abrogated some fundamental constitutional right. [455-460]

The record of a proceeding by managers of a condominium established under G. L. c. 183A, seeking the removal of two pet dogs from a condominium unit, did not reveal a genuine issue of waiver of violation or of arbitrary, capricious, or discriminatory enforcement of a condominium by-law banning all pets from any housing unit or common area of the condominium. [460]

Defendants who had not raised the issue at trial or objected to the award of attorney's fees in connection with a proceeding by managers of a condominium established under G. L. c. 183A, seeking the removal of two pet dogs from the defendants' condominium unit, were not entitled to a review of their liability for attorney's fees in connection with a condominium by-law provision entitling the plaintiffs to recoup the "cost and expense" of eliminating by-law violations by an offending unit owner. [460-461]

CIVIL ACTION commenced in the Superior Court Department on December 28, 1988.

---

[1]The plaintiffs are trustees of the Weymouthport Condominium — Phase I Trust.

[2]Of the estate of Margaret Wilson. Margaret Wilson died while this appeal was pending. The executor of her estate has been substituted as a party pursuant to Mass.R.A.P. 30(a), 365 Mass. 878 (1974).

The case was heard by *Roger J. Donahue, J.*, on motions for summary judgment, and a motion for assessment of attorney's fees and agreement to stay was also heard by him.

*Harry D. Quick, III,* for the defendant.

*Seth Emmer* (*Constance M. Hilton* with him) for the plaintiffs.

JACOBS, J. The plaintiffs, as managers of a condominium established under G. L. c. 183A, sought the removal of two pet dogs from a condominium unit owned by John Murphy and Margaret Wilson.[3] They based their action upon a condominium by-law banning all pets from any housing unit or common area of the condominium. They also sought to enforce by-laws providing for the assessment of a $5 per day per violation penalty and payment by the defendants of the "costs and expense of eliminating" violations. The defendants, by answer and counterclaim, questioned the validity of the pet restriction and the enforceability of any fines and assessments based upon it. A judge of the Superior Court allowed the plaintiffs' motion for summary judgment and denied that of the defendants. Murphy and Wilson appealed from a judgment which thereafter was entered ordering them permanently to remove their dogs and to pay to the plaintiffs assessments for penalties, costs, and attorney's fees totaling $15,244.75. We affirm.

The pertinent facts are as follows: Established in 1973, "Weymouthport Condominium — Phase I" is a 271-unit complex managed by a trust of which the plaintiffs are trustees. The trust was formed pursuant to G. L. c. 183A, § 8(*i*), to govern the management of the condominium and contained by-laws that incorporated rules and regulations which

---

[3]During the pendency of this appeal, the parties informed the court that the defendants no longer hold any interest in the unit in question as a result of a mortgage foreclosure sale. We were also informed during argument that the dogs which were the subject of the action were killed in the same accident which fatally injured Margaret Wilson. These events obviously rendered moot the issue of future compliance. The question of the validity of the pet restriction remains before us, however, because of its relationship to the issues of penalty and expense assessments discussed *infra.*

included a restriction against raising, breeding, or keeping any "animals or reptiles of any kind . . . in any Unit or in the Common Elements . . . ," together with a provision, sometimes referred to as an amortization or no replacement rule, that protected the harboring of pets owned at the time of purchase of a unit. In 1979, the original trust by-laws were amended to provide that "[n]o animals, reptiles or pets of any kind shall be raised, bred, kept or permitted in any Unit or in the Common Elements . . . ." The significant difference was that the pet restriction had ascended from rules and regulations to the by-laws. The amendment was enacted in response to the trustees' concern with pet problems and their understanding that *Johnson* v. *Keith*, 368 Mass. 316 (1975), had rendered unenforceable the pet restriction contained in the regulations.[4] The amendment also contained an amortization provision allowing unit owners and tenants "in occupancy prior to the recording of [the] amendment" to continue to keep in their unit any household pet owned by them at the time they purchased or rented their units. Also, the amendment made allowance for unit owners to have one household pet upon receipt of written permission of the trustees.

In September of 1983, Murphy and Wilson were notified by the manager of the condominium that a dog which they had acquired since purchasing their unit earlier that year was being kept by them in violation of the pet restriction

---

[4]A similarly absolute pet restriction was before the Supreme Judicial Court in *Johnson* v. *Keith, supra,* but the issue of its validity was expressly left unanswered. *Id.* at 321. The court held that rules and regulations governing use of a condominium unit were unenforceable notwithstanding that they were incorporated by reference into the by-laws of the organization of unit owners of the condominium. It noted that the rules and regulations were not recorded with the by-laws and that they could be amended by other than a two-thirds vote of the unit owners, as required for a by-law amendment. The court, in effect, decided that restrictions relating to the *use of a condominium unit* as distinguished from those relating to *use of the common areas and facilities* must be contained in either the by-laws or master deed to be enforceable under G. L. c. 183A. The court noted that "this technicality may be corrected by appropriate action of the unit owners." *Johnson* v. *Keith, supra* at 320-321.

amendment. After removing the dog, Murphy and Wilson, in November of 1983, and again in January of 1984, unsuccessfully sought permission to return it to the unit, the latter request being based upon Wilson's claimed permanent and total disability. In April, 1985, Murphy and Wilson moved out. After a period of renting out their unit, they reoccupied it in November, 1987. Upon being notified in May, 1988, that they were again in violation of the pet restriction, Murphy and Wilson requested and received permission to house their dogs (they had by then acquired a second dog) temporarily in their unit during weekends until October 1, 1988. When the dogs were not removed after that date, the plaintiffs imposed a fine of $5 a day and ultimately brought this action.

1. *Validity of the pet restriction.* The defendants claim the applicable standard for determining the validity of the pet restriction is that of "unreasonable interference" under G. L. c. 183A, § 11(*e*), as inserted by St. 1963, c. 493, § 1, which requires the by-laws of the organization of unit owners to "at least" contain such use restrictions "not set forth in the master deed, as are designed to prevent unreasonable interference with the use of [the owners'] respective units and of the common areas and facilities by the several unit owners." They argue that the question whether the presence of animals constitutes an unreasonable interference under the circumstances is one of material fact and therefore not suitable for resolution by summary judgment. They rely in large part on an affidavit of an expert in animal behavior who opines that "prohibition of all animals from the condominium units is more restrictive and burdensome than required to meet the statutory standard of preventing unreasonable interference with use of other units or the common areas." The affidavit points to animals such as goldfish and parakeets which "present[] no risk of interference of any kind to use of neighboring units or common areas." The argument misperceives both the thrust of the statute and the basic nature of condominium ownership.

Ownership of a condominium unit is a hybrid form of interest in real estate, entitling the owner to both "exclusive

ownership and possession of his unit, G. L. c. 183A, § 4, and . . . an undivided interest [as tenant in common together with all the other unit owners] in the common areas . . . ." *Kaplan* v. *Boudreaux*, 410 Mass. 435, 438 (1991). It affords an opportunity to combine the legal benefits of fee simple ownership[5] with the economic advantages of joint acquisition and operation of various amenities including recreational facilities, contracted caretaking, and security safeguards. Central to the concept of condominium ownership is the principle that each owner, in exchange for the benefits of association with other owners, "must give up a certain degree of freedom of choice which he might otherwise enjoy in separate, privately owned property." *Hidden Harbour Estates, Inc.* v. *Norman*, 309 So. 2d 180, 182 (Fla. Dist. Ct. App. 1975). See *Franklin* v. *Spadafora*, 388 Mass. 764, 769 (1983).

General Laws c. 183A, § 11(*e*), permits restrictions on the use of residential units which are "designed to prevent" unreasonable interference by individual unit owners with the other owners' use of their respective units and the common areas and facilities. There is no prohibition against restrictions that, although patently designed to prevent such interference, also incidentally preclude generically similar uses that may not be as likely to encroach on the other owners' use of their units and the common areas and facilities. Close judicial scrutiny and possible invalidation or limitation of fundamentally proper but broadly drawn use restrictions, not expressly prohibited by the enabling statute, would deny to developers and unit owners the "planning flexibility" inherent in c. 183A. See *Barclay* v. *DeVeau*, 384 Mass. 676, 682 (1981). In *Franklin* v. *Spadafora*, 388 Mass. at 769, the court upheld a by-law amendment restricting to two the number of condominium units which could be owned by one person or entity and noted that nothing in c. 183A prohibited

---

[5]The Uniform Condominium Act approved by the National Conference of Commissioners on Uniform State Laws in 1977 defines "condominium" as meaning "real estate, portions of which, are designated for separate ownership and the remainder of which is designated for common ownership solely by the owners of those portions." This Act has been adopted in ten states, but Massachusetts is not among them.

the type of general restriction at issue even if the court assumed that tenants would not be less responsible than owners. *Id.* at 768-769 & n.12. The court stated that, viewed as a compromise between the desires of the majority and the right of an individual owner to use property as he or she desires, "the amendment is a reasonable means of achieving the majority's proper goal." *Id.* at 769-770. See *Woodvale Condominium Trust* v. *Scheff,* 27 Mass. App. Ct. 530, 534-535 (1989) (a condominium association may prohibit the operation of a family day-care business in a unit notwithstanding that the enterprise's interfering effect on other unit owners is "minor . . . modest[] . . . [and] benign . . . ").

"The most common standard of review [of condominium use restrictions] is equitable reasonableness." Goldberg, Community Association Use Restrictions: Applying the Business Judgment Doctrine, 64 Chi.-Kent L. Rev. 653, 655 (1988). *Franklin* v. *Spadafora,* 388 Mass. at 770-772, can be read to favor such a test. Its formulation is commonly attributed to *Hidden Harbour Estates, Inc.* v. *Norman, supra,* a Florida decision cited in both *Franklin* v. *Spadafora, supra* at 769, and *Woodvale Condominium Trust* v. *Scheff,* 27 Mass. App. Ct. at 533, and in which it is stated that: "the test is reasonableness. If a rule is reasonable the association can adopt it; if not, it cannot. It is not necessary that conduct be so offensive as to constitute a nuisance in order to justify regulation thereof." *Hidden Harbour Estates, Inc.* v. *Norman,* 309 So. 2d at 182. This approach recognizes the discretion of the majority of unit owners while at the same time limiting their rule-making authority to those matters "that are reasonably related to the promotion of the health, happiness and peace of mind of the unit owners." *Hidden Harbour Estates, Inc.* v. *Basso,* 393 So. 2d 637, 640 (Fla. Dist. Ct. App. 1981). We recognize that a somewhat different standard of review may be implicated where, in contrast to this case, a restriction is promulgated after the owner who is in violation of the rule acquires his unit. See *Franklin* v. *Spadafora, supra* at 772-774.

When enacting the pet restriction in issue, the trustees expressed concern with "pet problems." The record indicates that they had received several complaints involving dogs and one that concerned a boa constrictor. Unit owners are not required to conduct investigations or cite authority in order reasonably to conclude that the presence of pets within the condominium may interfere with their health, happiness, and peace of mind.[6] It is a subject well within their common knowledge and competence. Also, considerations of efficient and even-handed enforcement support an absolute prohibition of all pets rather than a restriction limited to certain pets. Cf. *Wilshire Condominium Assn., Inc.* v. *Kohlbrand,* 368 So. 2d 629, 631 (Fla. Dist. Ct. App. 1979) (citing New York cases in which absolute dog prohibitions have been upheld as a matter of law). Any concern with procrustean effect is met by the provision giving the trustees discretion to permit a unit owner to keep a household pet.

A condominium use restriction appearing in originating documents which predate the purchase of individual units may be subject to even more liberal review than if promulgated after units have been individually acquired. The substance of the pet restriction in issue was part of the originating documents of the Weymouthport condominium. The master deed expressly made unit ownership subject to attached rules and regulations that contained the restriction. The 1979 incorporation of the restriction into the by-laws was undertaken primarily to better accommodate future enforcement. Constructive knowledge of the regulatory scheme of the condominium was chargeable to Murphy and Wilson as of the time they acquired their unit. See *Tosney* v. *Chelmsford Village Condominium Assn.,* 397 Mass. 683, 688 (1986).

---

[6]"Attitudes about pet animals are understandably passionate. One person's companion is another's nuisance. It is not necessary to approve or even sympathize with [the trustees'] position to acknowledge that an owner of . . . property may think it best for the property and for the preponderance of current and future [occupants] that there not be pet animals in the [condominium]." *Clifford V. Miller, Inc.* v. *Rent Control Bd. of Cambridge,* 31 Mass. App. Ct. 91, 95 (1991).

There is sound basis for treating restrictions in the originating documents as being "clothed with a very strong presumption of validity which arises from the fact that each individual unit owner purchases his unit knowing of and accepting the restrictions to be imposed. Such restrictions are very much in the nature of covenants running with the land and they will not be invalidated absent a showing that they are wholly arbitrary in their application, in violation of public policy, or that they abrogate some fundamental constitutional right. . . . Indeed, a use restriction in [the originating documents] may have a certain degree of unreasonableness to it, and yet withstand attack in the courts." *Hidden Harbour Estates, Inc.* v. *Basso*, 393 So. 2d at 639-640. See also Natelson, Law of Property Owners Associations § 4.4.4, at 34 n.17 (1989 & Supp. 1991) (questioning the appropriateness of reasonableness review when the regulation in question was enacted prior to its opponents' acquiring ownership and was known by them at the time of acquisition). Also, unit owners, upon purchase, may pay a premium to procure what they regard as a beneficial restrictive scheme. Note, Judicial Review of Condominium Rulemaking, 94 Harv. L. Rev. 647, 653 (1981). Under this formulation, the value of meeting the reasonable expectations of original unit owners and enforcing their right to freely associate by contract with persons of like expectations outweighs the possibility that some owners may purchase into a condominium regime without actual notice and full understanding of its restrictions. Our appellate decisions appear to recognize the validity of this approach. See *Tosney* v. *Chelmsford Village Condominium Assn.*, 397 Mass. at 688; *Woodvale Condominium Trust* v. *Scheff*, 27 Mass. App. Ct. at 533. (developers may impose reasonable restrictions on condominiums under c. 183A "and persons who contemplate acquisition of a condominium unit can choose whether to buy into those restrictions"). Compare Note, Condominium Rulemaking — Presumptions, Burdens and Abuses: A Call for Substantive Judicial Review in Florida, 34 U. Fla. L. Rev. 219, 227 & n.50 (1982) ("Because most buyers ignore or misunderstand disclosure statements, a

presumption of validity based on the unit owners' knowledge of [origination documents] rests on a practical fiction"); Note, Judicial Review of Condominium Rulemaking, 94 Harv. L. Rev. at 650-651. The defendants do not contend that there is any fundamental public policy or constitutional provision guaranteeing the right to raise, breed, or keep pets in a condominium. By insulating properly-enacted and evenly-enforced use restrictions contained in the master deed or original by-laws of a condominium against attack except on constitutional or public policy grounds, already crowded courts and the majority of unit owners who may be presumed to have chosen not to alter or rescind such restrictions will be spared the burden and expense of highly particularized and lengthy litigation.[7]

2. *Enforcement.* Murphy and Wilson received ample and repeated notice of violation and reasonable opportunity to comply with the restriction. The record does not reveal a genuine issue of waiver of violation or of arbitrary, capricious, or discriminatory enforcement. That the trustees consistently and reasonably utilized a complaint-driven procedure for enforcement, which incidentally may have focused on pets observed outside the units, rather than on any which might have been kept within, does not give rise to any constitutional issues.

3. *Fines and Fees.* The defendants argue that the by-law provision which entitles the plaintiffs to recoup the "cost and expense" of eliminating by-law violations by an offending

---

[7]We resist, as unnecessary to our decision, the plaintiffs' suggestion that we adopt the business judgment rule as the measure of the validity of the actions of a unit owners' organization. That rule, when applied, generally is invoked with respect to questions of the propriety of amendments to a preexisting regulatory scheme and essentially imposes fiduciary duties similar to those required of corporate directors. We recognize, however, that several States have adopted this standard and that it receives varying degrees of approval among commentators. See Hyatt, Condominium and Homeowner Association Practice: Community Association Law § 6.02(a)(1), at 212-218 (2d ed. 1988); Goldberg, Community Association Use Restrictions: Applying the Business Judgment Doctrine, 64 Chi.-Kent L. Rev. 653 (1988); Note, Judicial Review of Condominium Rulemaking, 94 Harv. L. Rev. at 664-667.

unit owner does not include attorneys' fees. The expense provision is part of a valid contract between the parties. *Barclay* v. *DeVeau*, 11 Mass. App. Ct. 236, 245 (Greaney, J., dissenting), *S.C.*, 384 Mass. 676 (1981). Attorneys' fees generally constitute the most substantial component of the cost of enforcement and, therefore, would appear to be within the context of the word "expense" and the objective intent of the by-laws to shift the financial burden of successful enforcement to the offender. We need not rule on the question, however, since there is no indication in the record that the defendants raised the issue below or objected to the award of attorneys' fees. *Edgar* v. *Edgar*, 406 Mass. 628, 629 (1990). The fines were in accord with the by-laws and were properly assessed by the plaintiffs and included in the judgment.

*Judgment affirmed.*