Smith, J.
I
David J. Franks seeks to recover damages he allegedly sustained in a fire at the Deerfield Forest Condominiums (“Deerfield Forest”) on November 15, 1992. He has brought suit against Pauline J. Hennessy and her estate, her guardians, and her guardians’ sureties; Barkan Management Company (“Barkan”); and the Trustees of Deerfield Forest Condominium Trust (“the Trustees”). The matter is before the court on motions for summary judgment brought by the Trustees and Barkan. For reasons stated, the motions are allowed.
BACKGROUND
For the purposes of this motion, the following facts are undisputed:
The Deerfield Forest Condominium Trust (“the Trust”) was created by recording a Master Deed with the Middlesex Registry of Deeds. The Trustees are the duly authorized representatives of the Unit Owners Association of the Trust pursuant to a Declaration of Trust filed with the Middlesex Registry of Deeds. Barkan manages Deerfield Forest on behalf of the Trustees.
Attached to the Declaration of Trust is Schedule A, which contains By-Laws and Rules and Regulations for Deerfield Forest. Schedule A lists certain rules regarding the behavior of residents inside the units, such as the prohibition of fires in the decorative fireplaces, and a ban on pets. Paragraph 8 of Schedule A states:
No Unit Owner shall engage in or permit any noxious or offensive activities, or make or permit any noises . . . nor do himself or permit anything to be done . . . either willfully or negligently, which: (a) May be or become an annoyance or nuisance to the other Unit Owners or occupants, (b) Will interfere with the rights, comforts or conveniences of other unit Owners, (c) May or does cause damage to any other emit or to the Common Areas and Facilities, or (d) Results in the removal of any article or thing of value from any other Unit Owner’s Unit or from the Common Areas and Facilities. The Unit Owner making or permitting such nuisance, interference, damage or removal shall be responsible for the elimination of such nuisance or interference and for the costs of the repair of such damage or replacement of the item removed. The Trustees of the condominium shall assess to such Unit Owner such costs.
Paragraph 23 of Schedule A provides: “All personal property of the Unit Owners ... in the Units . . . shall be kept therein at the sole risk and responsibility of the respective Unit Owners or occupant, and neither the Trustees . . . nor their respective successors or assigns, shall bear any responsibility therefore.” Similarly, paragraph 26 provides, “Each Unit Owner assumes responsibility for his own safety, actions, and conduct...”
Paragraph 27 of Schedule A states:
Upon the receipt of written notification of any Unit Owner as to the violation of any of these By-Laws, or upon the Trustees’ own initiative, the Trustees shall with respect to the first such violation, send a letter to the offending Unit Owner which sets forth the text of the By-Law and the Trustees’ authority to levy fines for violating the provisions of the By-Laws. Upon receipt of a second violation notification with respect to any Unit Owner who has previously been sent a violation letter by the Trust *326 ees, the Trustees shall impose a fine of $25.00 for each day such violation continues, or the Trustees, in their sole discretion, may arrange to remedy the violation at the violating Unit Owner’s expense.
Franks owned Unit #10 of Deerfield Forest. Hennessy owned Unit #8, which was downstairs from Franks’ unit. Hennessy caused a fire by carelessly disposing of a cigarette in her bedroom at approximately 12:30 A.M. on November 15, 1992. This fire engulfed Franks’ unit, resulting in destruction of his property and $200,000 worth of damage to the structure itself.
For many years prior to the fire, Hennessy had lived in her unit in a manner which reflected her inability to care for herself. She slept on a mattress on the floor, the food in her refrigerator was covered with mold, and she had twenty cats which were infested with fleas.
More pertinent to this lawsuit, there had been two fires in Hennessy’s unit prior to the fire which destroyed Franks’ unit. The first occurred on July 6, 1987. During this fire, a Deerfield Trust maintenance worker found her sitting transfixed and unmoving. He had to use a wheelchair to remove her from her unit so she would not be burned alive or asphyxiate. On August 24, 1990, Hennessy set another fire. A fireman told a resident of Deerfield Forest to “keep an eye on Pauline . . . She could kill you someday.” The fire at issue in this case occurred two years later on November 15, 1992.
In July, 1993, Phyllis Case, employed by Barkan as property manager for Deerfield Forest, revealed in a conversation with Franks’ wife that Barkan had been aware of Hennessy’s difficulties. Case told Ms. Franks that Hennessy had been a chronic problem, and had been in and out of mental institutions and detoxification facilities. She said that Barkan employees knew prior to the November 15, 1992 fire that Hennessy’s twenty cats were infested with fleas, that the Society for Prevention to Cruelty to Animals had investigated complaints about her, that the Town of Natick Health Department had investigated her unit after receiving complaints of unsanitary and deplorable living conditions, that Hennessy’s mental condition had caused her to allow the toilet to overflow and flood the home of her downstairs neighbors, and that she had caused two potentially life threatening fires. Further, case told Ms. Franks that Hennessy had burned candles in place of electric lights, and that she smoked endlessly. Case also told Ms. Franks that Barkan did not remove Hennessy prior to the November, 15, 1992 fire because, prior to that fire, Hennessy had not caused harm to any other unit owners.
In Counts VI and VII of his complaint, Franks alleges negligence and breach of fiduciary duty against the Trustees.[3] In Count VIII he alleges negligence against Barkan. The Trustees and Barkan have now brought this motion for summary judgment.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact in dispute and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 500, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Finally, “amoving party for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he demonstrates, by reference to materials described in Mass.R.Civ.P. 56(c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case.” Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716, 575 N.E.2d 734 (1991).
To sustain his claims against Barkan and the Trustees, Franks must prove they acted or failed to act in violation of a legal duty. Yakubowicz v. Paramount Pictures Corp., 404 Mass. 624, 629 (1989); Royal Indemnity Co. v. Pittsfield Electric Co., 293 Mass. 4, 6 (1935). The cases Franks relies on do not support his assertion that the Trustees and Barkan had a duty to protect him from the consequences of acts Hennessy committed in the privacy of her own home. Several of these cases concern the liability of innkeepers to their guests or colleges to their dormitory residents. These cases are based on a special relationship between the defendants and the plaintiffs which give rise to a duty of care. See Mullins v. Pine Manor, 389 Mass. 47 (1983). Franks has not pointed to any similar special relationship between condominium trusts and unit owners which would give rise to liability under the facts of this case.
Frances v. Village Green Owners, 42 Cal.3d 490, 723 P.2d 573 (1986), is more on point. In this case, the Supreme Court of California examined the liability of a condominium association for the criminal acts of a third party non-resident under California law. The condominium association had insisted that the plaintiff, a resident of the condominium, take down outside lighting in the common areas that would have allowed her to see an intruder who subsequently raped and robbed her. The Court held that, “under the circumstances of this case,” a condominium association could be held to the same duty of care as a landlord. Id. at 455. The Court stated, “Traditional tort principles impose on landlords, no less than on homeowner associations that function as a landlord in maintaining the common areas of a large condominium complex, a duty to exercise due care for the residents’ safety in those areas under their control.” Id. at 456.
*327 In Frances, the Supreme Court of California did not impose liability on condominium trusts for areas or functions not under the control of the trusts. Following that Court’s rationale, I turn to Massachusetts law to examine first, whether the Trust had control over Hennessy’s actions in her unit; and, second, if it did have such control, whether it had a legal duty to exercise it in a non-negligent manner.
Ownership of a condominium unit is a hybrid form of interest in real estate, entitling the owner to both exclusive ownership and possession of his or her unit and an undivided interest as tenant in common together with all the other unit owners in the common areas. Noble v. Murphy, 34 Mass.App.Ct. 452, 455-56 (1993). It affords an opportunity to combine the legal benefits of fee simple ownership with the economic advantages of joint acquisition and operation of various amenities, including recreational facilities, contracted caretaking, and security safeguards. Id. at 456.
G.L.c. 183A, the condominium statute, governs the rules applying to condominiums. According to this statute, each condominium unit “together with its undivided interest in the common areas and facilities ... shall constitute real estate, and may be the subject of demise, devise, gift, mortgage, ownership, possession, sale, trust, the laws of descent and distribution and all other rights incidental to the holding of real estate as if it were sole and entirely independent of the other units in the condominium of which it forms a part.” G.L.c. 183A, §3. Exclusive ownership and possession of a unit, however, is subject to prohibitions in the master deed, the right of the organization of unit owners to reasonable access to the irnit, and by-laws and administrative rules. G.L.c. 183A, §4. Similarly, G.L.c. 183A, §11 (e) allows “restrictions on and requirements respecting the use and maintenance of the [condominium] units and the use of the common areas and facilities ... as are designed to prevent unreasonable interference with the use of their respective units and the common areas and facilities by the several unit owners.”
Thus, G.L.c. 183A does not mandate that a condominium trust have or exercise any particular rights or responsibilities in regard to condominium units themselves. Rather, it allows such rights or responsibilities to be contracted for in the master deed, by-laws, and administrative rules. In contrast, the condominium statute explicitly gives responsibility for maintenance and repair of the common areas of a condominium to the organization of unit owners. G.L.c. 183A, §10(k).
The application of this statute was illustrated by the Supreme Judicial Court in Hawkins v. Jamaicaway Place Condominium Trust, 409 Mass. 1005 (1991). In this case, unit owners sued a condominium trust, alleging that the trust was negligent in failing to install bars on the windows of the plaintiffs’ unit, resulting in injuiy when an assailant entered through the window. The trust instrument for the condominium provided that if 75 percent of the unit owners approved improvements to the property, the cost of the improvements would be shared among all unit owners. If fifty percent agreed to the improvements, the costs would be shared among those who agreed. Prior to the assault, the plaintiffs knew of these rules, and did not pursue a proposal to install bars by seeking the support of other unit owners. Additionally, the plaintiffs could have installed the bars at their own expense, but chose not to do so. The Court held that because the plaintiffs did not avail themselves of the opportunities provided by the trust agreement to seek support from other unit owners for the window bars or to install the bars themselves, the condominium trust had no duty to protect them from a criminal attack that the bars would have prevented.
Both G.L.c. 183A and the Court in Hawkins, then, untangle the “hybrid” interests in condominium units referred to in Noble. They make clear that, in order to determine what rights and responsibilities condominium trusts and unit owners have with respect to each other, this Court must examine the trust agreement, by-laws, and regulations. In the case at hand, therefore, I examine Schedule A, which contains Deerfield Forest’s by-laws and regulations, to determine whether the Trust had a duty to protect Franks from Hennessy’s actions.
Schedule A prohibits noxious and offensive activities in a condominium unit, willfully or negligently causing a nuisance to other unit owners, interfering with the rights, comforts, or conveniences of other unit owners, and damaging other units. Schedule A, paragraph 8. Further, Schedule A requires that the unit owner causing such interference shall be responsible for the costs of repairs. Id.
Schedule A mandates some actions by the Trustees. For example, the Trustees must assess repair costs to the unit owner who caused damage to other units. Id. Further, upon receipt of written notification from a unit owner of violation of any of the regulations, the Trustees are required to send a letter to the offenders notifying them of the violation and possible fines. Schedule A, paragraph 27. Upon receipt of a second notice of violation, the Trustees are required to impose a fine on the offenders. Id. The Trustees also have the option of taking such action on their own initiative, or remedying the violation and assessing the offender the cost of the remedy. Id.
Hennessy had three major fires in her unit. There is evidence that she at least negligently set two of them, and that she ignored a third one as it was burning. These actions or inactions clearly violated the prohibition in Schedule A against conducting activities in her unit which may become a nuisance to other unit owners or may damage any other unit. Upon proof of these events, she herself would therefore be liable to Franks for the damage the third fire caused to his unit. *328 The Trustees, however, did not violate any duty to Franks. Franks did not submit evidence that the Trustees had received written complaints from Franks or other unit owners about Hennessy’s fires or her manner of living. Such written complaints would have invoked mandatory action by the Trustees, at least to the extent of instituting fines against Hennessy.[4] Absent such written complaints, under Schedule A any action by the Trustees was discretionary, not mandatory. The Trustees did not have a duty to undertake action which was discretionary. See Hawkins v. Jamaicaway Place Condominium Trust, supra.
Franks has not shown that the Trustees had a duty arising from law or contract to protect him from Hennessy’s acts or omissions.[5] Therefore, summary judgment must be granted to the Trustees. As an agent of the Trust, Barkan’s duly was no greater than the Trust’s duty, and summary judgment must be granted to Barkan as well.
II. MOTIONS TO STRIKE PLAINTIFF’S NOTICE OF APPEAL
On or about December 15, 1994 summary judgment was entered on behalf of defendants John B. Shevlin, Jr., James W. Murphy, William F. York, individually and as guardian, and Andrew J. Rogers, Jr., individually and as guardian. On or about December 27, 1994, the plaintiff filed notices of appeal from the above judgments. However, the notices of appeal are premature since there has been no entry of separate and final judgment pursuant to Mass.R.Civ.P. 54(b). Consequently, the notices of appeal are a nullity. The defendants’ motions to strike the notices of appeal are ALLOWED.
ORDER
1. For the foregoing reasons, it is hereby ORDERED that the motions for summary judgment of the Trustees of Deerfield Condominium Trust and of Barkan Management Company on Counts VI, VII, and VIII of the complaint be ALLOWED.
2. The notices of appeal which the plaintiff filed on or about December 27, 1994 are hereby STRICKEN.

A claim for breach of fiduciary duty usually refers to fraud or undue influence within a relationship of trust. See Saulenas v. Penn, 287 Mass. 409, 413 (1934). Franks has submitted no evidence of fraud or undue influence. Rather, in Count VII of his complaint, he alleges that the Trustees “had a duty to safeguard Franks, and others, from harm." The discussion below regarding the Trustees’ duty to Franks is therefore applicable to this count.

Even if the Trustees had received such written notice, Franks would still be required to prove that the Trustees’ failure to fine Hennessy was the proximate cause of the fire.

Franks makes an additional argument that because the Trust had insurance from which the Trust or Hennessy may be able to recover, the Trustees are liable to Franks. The presence or absence of insurance neither proves nor disproves whether a party acted negligently. Goldstein v. Gontarz, 364 Mass. 800, 808 (1974). Therefore, whether or not such insurance coverage existed does not affect the decision in this case.