Fecteau, J.
This is an action by which the plaintiff, a cooperative apartment association, seeks to enforce a house rule which prohibits the harboring of dogs in the apartment complex by obtaining a permanent injunction that orders the defendants to remove the dog, and a judgment imposing the fines and legal fees that the plaintiff has assessed against the defendants. The defendants contend that the rule is unreasonably restrictive, that they have never received notice of the rule that the plaintiff seeks to enforce and that the plaintiffs’ enforcement of the rule is arbitrary, capricious, unconscionable, amounts to selective enforcement and would lead to extreme emotional distress. In addition, the defendants assert counterclaims that allege retaliatory eviction, rent withholding, a failure to provide adequate hot water, abuse of process, defamation, intentional infliction of emotional distress and claim miscellaneous expenses in relation to the *77 plaintiffs’ prosecution of a summary process action that ended in a dismissal.
This matter came on for trial before me, sitting without a jury, on November 17 and 18, 1999. Upon consideration of the credible evidence, I make the following findings of fact and rulings of law.
FINDINGS OF FACT
1. The plaintiff corporation, Park Village West Association, Inc., (herein “Park Village”), and its directors are engaged in the operation of Park Village West, a cooperative formed in 1982, with approximately 250 apartments and that is located near Route 9, Westborough. The defendants are tenants and owners of shares in the corporation. They have resided since approximately 1993, in Unit V-l, in Building V. They first signed a purchase and sale agreement during 1985, for this unit but were unable to acquire it until June 25, 1987, signing a “proprietary lease” on that date. They had intended to move into that unit as soon as practicable thereafter, but were delayed, for various reasons, from being able to do so. They had owned at least one other unit prior to their acquisition of the unit in question, acquiring it in 1984 and in which they resided.
2. Paragraph 13 of the proprietary lease states:
The lessor has adopted house rules which are appended hereto. The Board may alter, amend or repeal such House Rules and adopt new House Rules at any time and from time to time. The lease shall be in all respects subject to such House Rules, as the same may be amended from time to time, so that when a copy thereof has been furnished to the lessee, it shall be taken to be part hereof. The lessee hereby covenants to comply with all such House Rules and to see that they are faithfully observed by the family, guests, employees and sub-tenants of the lessee. Breach of the House Rules shall be a default under this lease. The lessor shall not be responsible to the lessee for the non-observance or violation of House Rules by any other lessee or person.
(Ex. 1.) The copy of the proprietary lease introduced into evidence does not have appended to it any house rules.
3. At the time the cooperative was formed, the creators attached House Rules to the proprietary lease and recorded same in the Worcester District Registry of Deeds. Rule 15 of the House Rules at that time stated, in pertinent part:
No bird, or animal shall be kept or harbored in the building unless the same in each instance shall have been expressly permitted in writing by the lessor. Such permission shall be revocable by the lessor . . .
(Ex. 4.)
4. On July 22, 1986, the board of directors amended the House Rules. In connection with animals or pets, the following rule was created:
24. No dogs allowed unless registered on or before July 2, 1986. Customary household pets will be allowed as defined as indoor cats, gerbils, birds, hamsters, fish and turtles.
(Ex. 3.)
5. In addition, a House Rule was added that allowed the imposition of fines in connection with the enforcement of the rules regarding pets:
28. Action will be taken to remove all unauthorized pets and further penalties including fines of $10.00 per day shall be levied against the Unit Owner.
6. Paragraph 28 of the proprietary lease states:
If the lessee shall at any time be in default hereunder and the-lessor shall incur any expense (whether paid or not) in performing acts that the lessee is required to perform, or instituting any action or proceeding based upon such default, or in defending, or asserting a counterclaim in any action or proceeding brought by the lessee, the expense thereof to the lessor, including reasonable attorneys fees and disbursements, shall be paid by the lessee to the lessor, on demand, as additional maintenance charges (rent).
7. At the time that the defendants first acquired and occupied any unit, they did not have a dog or other pet. They did not acquire any pet until approximately March 1995, when they obtained a “shi tzu” dog.
8. The custom and practice that the plaintiffs employed to inform unit owners and occupants of the approval and applicability of the House Rules amended in July 1986 was to attach a copy to each new owner’s proprietary lease upon signing after that date and to distribute, by hand, a copy to each apartment, leaving it at the door. The plaintiff offered no direct evidence of the defendants having received actual notice to them of the 1986 House Rules, such as a signed acknowledgment or proof of service. The defendant Robert Sugar admits, however, having received a copy of the original House Rules but denies they ever received any notice of the 1986 House Rules prior to the first enforcement letter from the board to them in June 1995. To the extent that he testified that prior to their having obtained the dog in March 1995, he and his family had not received notice of the 1986 change of the House Rules, he is believed. However, upon obtaining the dog and bringing it into the apartment complex, and harboring it in their apartment, they were knowingly violating the original House Rules in that they failed to receive express permission. Whatever reason the defendants may have had in not having requested permission is not relevant.
9. The defendants are not being selectively singled out for the enforcement of House Rules concerning dogs. Upon amending the rules in 1986, the board *78 allowed for the “grandfathering” of dogs that had been previously and expressly permitted. At that time, there were four such dogs. At the present time, there is only one. Therefore, the defendants’ dog, not having been present and permitted as of July 22, 1986, is not “grandfathered. ”
10. The defendants contend that the board’s enforcement of this rule is being done with an ulterior motive, namely, to force a “distress sale” of the defendants’ unit whereby persons favored by the board would be able to obtain their unit at an attractive, below-market-value cost. The defendant has failed to produce credible evidence concerning this issue but rather has argued innuendo and assigned speculative motives to the board.
11. The defendant has pleaded seven counterclaims, many of which relate to retaliatory eviction, rent withholding, inadequate supplies of hot water and other complaints concerning issues concerning whether this litigation amounts to an abuse of process, given a summary process action having been brought against these defendants by the plaintiffs was dismissed, whether the defendants have been defamed and whether the plaintiffs have intentionally inflicted emotional distress. With respect to each and every one, the defendant has failed to sustain his burden to prove that they are entitled to relief.
12. The plaintiffs submitted evidence including invoices for legal fees and costs of$ 19,192.55.1 find that among charges sought are those related to the attempt by the plaintiffs to evict the defendants by a summary process action in the Housing Court. That action was dismissed for failure to follow the lease requirement that called for a vote of 90% of the unit owners in order to proceed with that action. I find that it is not reasonable to assess the defendants charges related to that action. I find that the total of fees and costs reasonably related to this action, through and including the trial of this case to be $13,704.45.
13. The plaintiffs’ forbearance in commencing enforcement actions from the first violation notice sent to the defendants in June 1995 until the commencement of the Housing Court action does not amount to a waiver. It was in the interest of the unit owners to seek, for a reasonable period of time, a consensual resolution of the violation without the incurrence of expense. The period of time that the defendants contend as evidence of waiver was not unreasonable.
RULINGS OF LAW
This case presents the issues of whether the original house rules apply or the rules as amended in 1986, whether, if the 1986 rules apply, restrictions such as the house rules of the apartment cooperative must be recorded at the registry of deeds, similar to the master deed and by-laws of a condominium complex, and, if not, whether the pet restriction is reasonable and enforceable.
As a matter of fact, it has been found that the 1984 rules apply in this case, due to the fact that the plaintiff has not met its burden of proof to show that it complied with the requirement in the proprietary lease that the unit owner be furnished a copy of rule changes. There was no direct evidence to show that the defendants actually received the 1986 Rules, either by a signed acknowledgment, or testimony from any person that such were given to these defendants. The only evidence on the issue of notice was the custom and practice of the plaintiffs to attach it to the lease upon signing and leaving copies at the doors of the apartments. The state of the evidence on notice, even without consideration of the defendant’s denial of receipt of the 1986 rules, would require the court to infer actual notice. Having found the defendant credible on the issue of notice, the plaintiff has failed to prove compliance with its own rules, i.e., for a rule change to become effective, unit owners must receive a copy of it.
To the extent that it may become an issue in the future, the house rules of a cooperative do not have to be recorded at the registry of deeds. In a case decided by our Supreme Judicial Court concerning whether “cooperative” apartment complexes were to be treated like condominiums for purposes of determination of the conversion rights under G.L.c. 121A, the court described cooperatives as follows:
A housing “cooperative” connotes a multi-dwelling complex in which each owner acquires interest in the complex and a proprietary lease to his own apartment. Black’s Law Dictionary, 302 [5th Ed. 1979], A condominium on the other hand describes a single real property parcel with all the unit owners having a right in common to use the common element, with separate ownership confined to the individual units. Black Law Dictionary, 267 [5th Ed. 1979]. A condominium therefore is a statutory creation, G.L.c. 183A, separate and distinct from a cooperative, G.L.c. 157, sec. 3(a). This is clear from sec. 18(d) itself which specifies that the provisions of G.L.c. 183A shall govern unless otherwise indicated. It is equally clear that G.L.c. 183A does not govern cooperatives. The fact that each is governed by separate legislative enactments fortifies the conclusion that the word “condominium” does not include within the meaning of the term “cooperative.”
Bronstein v. The Prudential Insurance Company of America, et al., 390 Mass. 701, 704 (1984).
There is no question but that if Park Village West was a condominium complex, a pet restriction, in order to be enforceable as against these defendants, and in connection with their use of their individual unit, as opposed to the common areas, it would have had to have been recorded in either the master deed or by-laws. Johnson v. Keith, 368 Mass. 316 (1975). However, Park Village West is not a condominium. *79 There is no statutory or other requirement that the pet restriction in question, or any restriction for that matter, has to be contained in a recorded instrument or document. To the extent that the defendants contend that the case of 1010 Memorial Drive Tenants Association v. Fire Chief of the City of Cambridge, 424 Mass. 661 (1997), holds that there is no distinction between condominium and cooperative apartment complexes, for all purposes, it is distinguishable from the case at bar. There, the question involved the imposition of a smoke detector requirement as a matter of public safety and not the application of statutory restrictions upon the internal operation of either form of multi-unit complexes as they may affect the property rights of occupants.
Turning then, to the issue of the issue of the enforceability of the restriction in question, in a case which concerned the reasonableness of a pet restriction in a condominium, the court said that “central to the concept of condominium ownership is the principle that each owner, in exchange for the benefits of association with other owners, must give up a certain degree of freedom of choice which he might otherwise enjoy in separate, privately owned property.” Noble v. Murphy, 34 Mass.App.Ct. 452 (1993), quoting from Hidden Harbour Estates, Inc. v. Norman, 309 So.2d 180, 182 (Fla.Dist.Ct.App. 1975). Among benefits cited by the court in association with other owners are joint acquisition, and the operation of various amenities, including recreational facilities, security and caretaking. The court found that the restriction at issue therein was reasonable, and, since the restriction was included in the properly recorded instruments, it was enforceable. Likewise it is here. The fact that the plaintiffs may not have proven that the defendants’ dog is a nuisance or otherwise interferes with the other unit owners of the complex is not material to the central issues in the case. Both the original and the 1986 pet restrictions were reasonable in the exercise of the discretion granted to the board of directors in the organizational documents for the management of this 250-unit complex. The court is not unsympathetic to the reasons professed by the defendants for obtaining the dog in 1995. Whatever reason a party in the position of these defendants may have is not relevant, however. Moreover, it was the choice of the defendants to live in cooperative housing, making them subject to the rules and the rule-making authority of the board. The plaintiff is entitled to an order which requires the observance of the 1984 pet restriction by the defendants. Since they have not obtained the express permission of the board, they must remove the dog from the premises. Moreover, the proprietary lease allows for the imposition of the reasonable costs of enforcement, including attorney fees. Since the daily fine was added in the 1986 amendment, and having found that it does not apply to the facts herein, the plaintiff is not entitled to the imposition of the fine.
With respect to the counterclaims of the defendants, the retaliatory eviction claim does not apply herein as this matter is not a summary process; likewise, reliance upon rent withholding, conceptually, like retaliatory eviction, more properly considered a defense, rather than a counterclaim, is mistaken. Furthermore, there is no evidence offered by the defendants of compliance with the rent withholding statute. To the extent that the defendant offered evidence of the failure of the plaintiffs to supply adequate hot water, there was no evidence offered of the duration of such harm or damages. The defendants claim that this case is an abuse of process considering the dismissal of a summary process action in the housing court. However, as was decided in connection with the defendants’ motion to dismiss on the ground of res judicata, the dismissal in the housing court was jurisdictional and not a decision on the merits of the claim. Therefore, since this case involves different issues than those in the housing court, this matter is not an abuse of process. There was no evidence offered by the defendant that they or either of them were the subject of any defamatory statements. Finally, there has likewise been a failure of the defendants to produce any evidence in support of the necessary elements concerning their claim of intentional infliction of emotional distress.
ORDER
For the foregoing reasons, a judgment shall enter in favor of the plaintiffs that orders the defendants to remove the dog from the premises within 60 days; judgment shall also enter in favor of the plaintiffs in the amount of $13,704.45 for the fees and costs incurred by the plaintiffs as reasonable and necessary for the enforcement of the 1984 pet restriction as against the defendants.