Board of Managers of Old Colony Village Condominium *v.* Preu.

## BOARD OF MANAGERS OF OLD COLONY VILLAGE CONDOMINIUM *vs.* STEVEN PREU.

No. 10-P-875.

Barnstable. February 14, 2011. - October 31, 2011.

Present: RAPOZA, C.J., MEADE, & RUBIN, JJ.

*Condominiums,* By-laws, Common area. *Real Property,* Condominium. *Constitutional Law,* Freedom of speech and press, State action.

This court concluded that when an action is brought claiming that a condominium unit owner's breach of condominium restrictions on speech and expressive conduct amounted to conduct entitling the condominium association to collect expenses from the owner under G. L. c. 183A, § 6(*a*)(ii), the restrictions are subject to scrutiny under the First Amendment to the United States Constitution. [731-734]

A Superior Court judge correctly declined to issue a permanent injunction enjoining and restraining a condominium unit owner from having any conduct, other than in writing, with condominium staff or board members, except in case of an emergency, where such an injunction would amount to an unconstitutional prior restraint on the owner's rights under the First Amendment to the United States Constitution. [734-735]

CIVIL ACTION commenced in the Superior Court Department on May 6, 2009.

The case was heard by *Regina L. Quinlan,* J., and a request for assessment of attorney's fees and costs was considered by her.

*Thomas O. Moriarty* for the plaintiff.

*Jennifer S.D. Roberts* for the defendant.

RUBIN, J. This case involves a question about the applicability of the First Amendment to the United States Constitution to a claim that a condominium unit owner's speech and expressive conduct constitute a violation of "the requirements of the master deed, trust, by-laws, restrictions, rules or regulations [of the condominium], or . . . misconduct" within the meaning of G. L. c. 183A, § 6. We hold that the First Amendment does

apply to such a claim. We also conclude that the limited arguments put forward by the plaintiff are insufficient to demonstrate that the expenses it incurred as a result of the defendant's posting of two signs critical of management in the trash room of the condominium may in the circumstances of this case, consistent with the First Amendment, be imposed upon the defendant under the statute.

*Background.* This suit was brought by the elected board of managers of the Old Colony Village Association (board), the organization of unit owners of the Old Colony Village Condominium (condominium), a residential condominium complex established by master deed on May 27, 1970, and located in Orleans. Primarily at issue is a claim for a declaration that the defendant Steven Preu, a unit owner at the condominium, had, by violating the master deed, by-laws, and rules of the condominium, engaged in conduct for which the plaintiffs were entitled to collect expenses from him under G. L. c. 183A, § 6(*a*)(ii). The statute provides that "[i]f any expense is incurred by the organization of unit owners as a result of the unit owner's failure to abide by the requirements of this chapter or the requirements of the master deed, trust, by-laws, restrictions, rules or regulations, or by the misconduct of any unit owner . . . the organization of unit owners may assess that expense exclusively against the unit owner." G. L. c. 183A, § 6(*a*)(ii), inserted by St. 1992, c. 400, § 7. After a four-day bench trial, a judge of the Superior Court concluded that Preu had engaged in a wide range of misconduct in violation of G. L. c. 183A, § 6(*a*)(ii).

In *Noble* v. *Murphy*, 34 Mass. App. Ct. 452, 456 (1993), we held that in determining whether condominium rules were enforceable they were to be reviewed for "equitable reasonableness." We held that

> "General Laws c. 183A, § 11(*e*), permits restrictions on the use of residential units which are 'designed to prevent' unreasonable interference by individual unit owners with the other owners' use of their respective units and the common areas and facilities. There is no prohibition against restrictions that, although patently designed to prevent such interference, also incidentally preclude generically similar uses that may not be as likely to encroach on the

other owners' use of their units and the common areas and facilities."

*Ibid.* We stated, however, that such regulations are subject to invalidation if they violate a right guaranteed by "any fundamental public policy or constitutional provision." *Id.* at 460. We added that the deference due condominium restrictions might be less where they were adopted after a unit owner's acquisition of his or her unit. See *id.* at 457.

There was evidence at trial of a history of erratic and disruptive behavior by Preu at the condominium, and of a growing strain in relations between Preu on the one hand and the board and condominium manager on the other. The judge did not assign blame for the strained relations.

The judge found that (a) Preu placed in the common area of the condominium on two separate occasions bags containing dog feces and labeled with the name of board president Gerard Ritzinger, apparently in response to Preu's belief that Ritzinger had allowed his dog to defecate in an area in which it was forbidden; (b) Preu placed a fan within the common area; (c) Preu wedged open fire doors that were required to be closed; and (d) Preu closed and obstructed the fire doors within the common area that were designed to be left open.

The judge concluded that Preu's conduct with regard to the fans and the dog feces violated article V, § 13, of the condominium by-laws, entitled "Use of Common Areas and Facilities," which provides in pertinent part that "[a] unit owner . . :ll not place or cause to be placed in the stairways or other ·.nmon areas or facilities, other than the areas designated as ·orage areas, any furniture, packages, or objects of any kind." ·· e judge also held that Preu's tampering with the fire doors :olated rule 3 of the condominium rules and regulations, which )verns common areas and states that "[f]ire doors within build- gs shall remain closed at all times." The judge also found that .is conduct fell within the definition of "misconduct" under . L. c. 183A, § 6(*a*)(ii) — she equated rules violations with nisconduct" — a determination from which Preu has not .·pealed.[1]

---

[1]Since by its terms the statute allows the collection of expenses arising

The judge, however, ruled that Preu's "posting hand-made signs in the trash area . . . regarding the cleanliness of the Condominium common areas, as well as leaving a note on a neighbor's door," about which the board complained, were not "misconduct" within the meaning of G. L. c. 183A, § 6(*a*)(ii). The judge assumed without deciding that the signs were "objects" within the meaning of the condominium by-law. But the judge concluded that "communication by signs and posters is pure speech," *Nyer* v. *Munoz-Mendoza*, 385 Mass. 184, 188 (1982), and that Preu's conduct was protected by the First Amendment. The judge held that if the by-law were read to prohibit this conduct, it was not "equitably reasonable," and, in reliance on *Noble* v. *Murphy*, 34 Mass. App. Ct. at 457, 459, declined to rule that the conduct violated the condominium documents or amounted to misconduct. The board now appeals.[2]

*Discussion.* The board's sole contention, with respect to the judge's conclusions described above, is that in this action the First Amendment is inapplicable to Preu's conduct in posting signs in the trash room. We address only that contention. The board's brief indicates that it has dropped its challenge to the posting of notes on the door of another unit owner.

We may assume without deciding, as the judge below did, that the by-law prohibits Preu's posting of signs. The board raises three distinct, but narrow, contentions.

First, the board contends that there is no State action, and that the First Amendment thus cannot be implicated in this lawsuit. The First Amendment, made applicable to the States through the Fourteenth Amendment to the United States Constitution, of course restricts only State action. *New York Times Co.* v. *Sullivan*, 376 U.S. 254, 265 (1964). In this case, a State statute provides that the expenses the plaintiff has incurred "as a result of" Preu's "failure to abide by . . . the requirements of the master deed, trust, by-laws, restrictions, rules or regulations, or by [his] misconduct" must be borne by Preu. G. L. c. 183A, § 6(*a*)(ii). The United States Supreme Court has made clear in

from rules violations, we need not, and do not, address the correctness of the judge's definition of "misconduct."

[2]Although Preu paid a filing fee in connection with a cross appeal, he has failed to argue a cross appeal in his brief and thus it is waived. See Mass. R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

the context of civil actions involving private parties and common-law claims that "the application of state rules of law in state courts in a manner alleged to restrict First Amendment freedoms constitutes 'state action' under the Fourteenth Amendment." *Cohen* v. *Cowles Media Co.*, 501 U.S. 663, 668 (1991) (addressing enforcement of a confidentiality agreement by way of a private cause of action for promissory estoppel). There is thus in this case State action sufficient "to constitute 'state action' for purposes of the Fourteenth Amendment." *Ibid.*

Second, the board contends that the First Amendment does not prevent a property owner from restricting the exercise of free speech on private property. Even if the proposition put forward by the board is true as a general matter, the relationship between a unit owner and the common area of a condominium is not the same as that between a member of the public and some third party's private property. "Ownership of a condominium unit is a hybrid form of interest in real estate, entitling the owner to both 'exclusive ownership and possession of his unit, G. L. c. 183A, § 4, and . . . an undivided interest [as tenant in common together with all the other unit owners] in the common areas . . . .' " *Noble* v. *Murphy*, 34 Mass. App. Ct. at 455-456, quoting from *Kaplan* v. *Boudreaux*, 410 Mass. 435, 438 (1991). Thus, as *Noble* indicates, a condominium association does not have as free a hand in restricting the speech of unit owners in the common areas in which those owners share an undivided property interest as another property owner might in dealing with a stranger on his or her property.

Finally, the board argues that Preu's speech via the signs he posted comes within one of the well-defined and narrowly limited classes of speech that is unprotected. In its brief, however, it simply provides an undifferentiated list of all the historically unprotected categories recited in *Chaplinsky* v. *New Hampshire*, 315 U.S. 568, 571-572 (1942). In this, the board appears to be referring at least primarily to other expressive conduct it challenged, see *infra*, although in a letter to Preu, counsel for the board described at least some of the signs as "defamatory." Nonetheless, the board makes no substantial argument that the signs posted in the trash room are unprotected, and we do not think it has shown that they fall into any such category.

Because these are the only arguments made by the board with respect to the signs posted by Preu, our conclusions suffice to address the board's contention that the by-law's blanket prohibition on the posting of signs in the common area and its application to Preu's posting of signs in the trash room are not subject in this action to scrutiny under the First Amendment. The board has raised no argument that the by-law would survive First Amendment scrutiny, and we therefore do not address that question.

Because we recognize the delicacy and importance of the balance between, on the one hand, the needs of condominium owners to act collectively through rulemaking to create a desirable living environment and, on the other, the rights of individual unit owners, we emphasize the narrowness of our holding. We do not hold condominium restrictions on speech and expressive conduct may never be enforceable, nor that expenses incurred in addressing their violation may never be shifted to the unit owner under the statute. We hold only that when an action is brought claiming that the breach of such restrictions amounted to conduct entitling a plaintiff to shift its costs under G. L. c. 183A, § 6(*a*)(ii), the restrictions are subject to scrutiny under the First Amendment. While we do not reach the question, there is no reason to think that G. L. c. 183A, § 6(*a*)(ii), cannot be applied, for example, to enforce such regulations as would comply with the First Amendment if enacted by a governmental entity.[3]

We also note that there was no claim here that in buying his unit at the condominium, Preu waived his First Amendment rights. We therefore need not determine either the proper standard for evaluating contractual provisions that restrict speech, see, e.g., *Perricone* v. *Perricone*, 292 Conn. 187, 202 (2009) (concluding after *Cohen* v. *Cowles Media Co.*, *supra*, that such provisions are not subject to strict scrutiny and will be upheld if they amount to a voluntary and knowing waiver of First Amendment rights), or whether under that standard provisions like those at

---

[3]In particular, we do not address the question whether condominium by-laws or rules that, if enacted by a municipality, would pass muster as content-neutral time, place, or manner restrictions are enforceable under the statute. Nor do we express any opinion whether the First Amendment permits judicial enforcement under the statute of condominium restrictions on speech broader than those that might constitutionally be enacted by a municipality.

issue here would be enforceable in a properly pleaded action making such a claim. Those questions are for another day.

The board also argues that the judge erred in determining that other conduct was protected by the First Amendment — namely, Preu's writing "insulting messages" within the memo sections of the checks with which he pays his monthly condominium fees and his giving a well-known and insulting hand gesture to Ritzinger and Ralph DiMonte, the condominium manager, when he passed them in the common areas, as well as to security cameras around the premises. Preu responds that "the lower court did not reach the First Amendment issue with respect to the messages on the checks or the hand gestures to the surveillance cameras." Although the judge's opinion does draw some conclusions about that conduct, in the present circumstances some additional First Amendment assessment of and findings about it and Preu's gestures to Ritzinger and DiMonte, about which the judge concluded only that in the circumstances here they were not unprotected "fighting words," is necessary in light of our analysis to determine whether expenses accrued as a result of such conduct may be imposed on Preu. Consequently, we remand the case for further proceedings consistent with this opinion with respect to this alleged conduct.[4]

The board further claims that it is entitled to more in attorney's fees under G. L. c. 183A, § 6(*a*)(ii), than were awarded by the judge. Because the judgment, and thus perhaps the amount of attorney's fees, may be revised after remand, we will not address the claim for attorney's fees at this time.

Finally, the board also challenges that portion of the judgment declining to issue a permanent injunction enjoining and restraining Preu from having any contact, other than in writing, with condominium staff or board members, except in case of an emergency.[5] The judge concluded that such an injunction would

---

[4]In its brief, the board also refers to Preu "shouting obscenities at members of the Board," as well as unspecified "comments" and "statements" made to "other Unit Owners, residents, the Board of Managers, the Condominium staff and Board of Managers' counsel." The judge below did not address any such conduct. While Preu hypothesizes that this was because of "limited evidence on the issue," the judge will be free on remand to provide clarification, or to address this conduct if its lawfulness is properly before her.

[5]Although the injunctive relief sought below was broader, this is all the board requests on appeal.

amount to an unconstitutional prior restraint. Given the breadth of the injunctive relief the board requests, and the amount of speech it would prohibit, we agree. "Assuming a right to restrict speech on the basis of legitimate State or private interest, the means used must be precisely and narrowly drawn so as to avoid unnecessary restriction of constitutionally protected liberty." *Nyer* v. *Munoz-Mendoza*, 385 Mass. at 188.[6]

The judgment is vacated in part and affirmed in part, and the matter is remanded for further proceedings consistent with this opinion.[7]

*So ordered.*

---

[6]The trial judge also ruled that the board had not met its burden of demonstrating a private nuisance, a ruling from which the board does not appeal.

[7]The parties' requests for appellate attorney's fees are denied.