EDWARD G. MCENEANEY, JR. vs. CHESTNUT HILL REALTY
CORPORATION & others.[1]

No. 94-P-208.

Norfolk. January 13, 1995. - May 17, 1995.

Present: KASS, PORADA, & IRELAND, JJ.

*Fraud. Real Property*, Condominium, Sale. *Sale*, Real estate. *Condominiums*, Common area. *Limitations, Statute of. Nuisance. Fiduciary.*

Allegations in a plaintiff's claim against a real estate agent for misrepresentation with respect to the quietness of a certain condominium unit were sufficient allegations of a false statement of fact to withstand the defendant's motion to dismiss under Mass. R. Civ. P. 12 (b)(6). [575-576] KASS, J., dissenting.

The statute of limitations in G. L. c. 260, § 2A, did not bar a claim for misrepresentation, where the statute was tolled until the date the plaintiff learned of the misrepresentation and the claim was filed within three years of that discovery. [576-577]

This court concluded that, the nature of a condominium owner's ownership interest in the condominium property does not preclude the owner from maintaining an action for nuisance against the condominium association for an alleged nuisance in the common areas [577-578] or for alleged breach of the trustees' fiduciary duties arising out of such a nuisance [579]. KASS, J., concurring.

CIVIL ACTION commenced in the Superior Court Department on May 17, 1993.

The case was heard by *Richard G. Stearns*, J., on motions to dismiss.

*Albert A. DeNapoli* (*Edward R. Wiest* with him) for the plaintiff.

*James W. Murphy* for Chestnut Hill Realty Corporation.

[1]Brenda Marsh; and Denise Karlin, Lawrence Goodman, Howard Hirsh, Ellen Berlin, Melvin Gordon, Donald Martin, and Stuart Sojcher, trustees of the Brook House Condominium Trust.

*James S. Franchek* for trustees of Brook House Condominium Trust.

PORADA, J. On August 21, 1987, the plaintiff purchased a condominium at the Brook House in Brookline. At the time of the purchase he inquired of the real estate agent, the defendant Brenda Marsh, whether the condominium was quiet and was assured by her that "the unit was quiet and that there [were] no noise problems with the unit." In June, 1990, the plaintiff began to experience noise and vibrations in his condominium after an air conditioning chiller system which was in place in a common area of his building but was inoperative at the time of purchase was activated. When the noise level and vibrations were not remedied by the trustees of the Brook House Condominium Trust, he filed an action in the Superior Court against Marsh and her employer, Chestnut Hill Realty Corporation (Chestnut Hill), for misrepresentation and against the trustees for nuisance and breach of fiduciary duty.

In response to the plaintiff's complaint, all the defendants filed motions to dismiss for failure to state a claim under Mass. R.Civ.P. 12(b) (6), 365 Mass. 755 (1974). A judge of the Superior Court dismissed the claims against Marsh and Chestnut Hill on the ground that the statements made by Marsh about the quietness of the apartment were mere expressions of opinion and, thus, not actionable. The judge also ruled that these claims were barred because the plaintiff failed to allege any facts showing that the realtor's statements were untrue when made.

The judge dismissed the claims against the trustees on the ground that an action for private nuisance lies only where there are two separate parcels of land, one on which the nuisance exists and another whose occupants are burdened by the nuisance. Here, the judge determined that the alleged nuisance was located on the same parcel of land as the plaintiff's unit because the plaintiff possessed an ownership interest both in his unit and in the common areas from which the offending condition emanated. He concluded that the plaintiff's claim for breach of fiduciary duty must also fail be-

cause it was predicated on the trustees' maintenance of a nuisance.

The plaintiff filed this appeal from the judgment dismissing his complaint. We reverse for the reasons stated.

1. *The misrepresentation claims.* The plaintiff claims that the judge erred in dismissing the misrepresentation claims because Marsh's statement was indeed a statement of fact and sufficient facts were alleged in the complaint to challenge its truthfulness. We agree.

A claim for misrepresentation requires that a plaintiff show a false statement of material fact made to induce the plaintiff to act and reliance on the false statement by the plaintiff to his detriment. *Zimmerman* v. *Kent*, 31 Mass. App. Ct. 72, 77 (1991). The distinction between a statement of fact and a statement of opinion is often a difficult one to draw. *Fogarty* v. *Van Loan*, 344 Mass. 530, 532 (1962). "A representation is one of opinion if it expresses only (a) the belief of the maker, without certainty, as to the existence of a fact; or (b) his judgment as to quality, value, authenticity, or other matters of judgment." Restatement (Second) of Torts § 538A (1977). In some circumstances, however, a statement that in form is one of opinion may constitute a statement of fact if it may reasonably be understood by the recipient as implying that there are facts to justify the opinion or at least that there are no facts that are incompatible with it. *Briggs* v. *Carol Cars, Inc.*, 407 Mass. 391, 396 (1990) (car dealer's representation that car was in "good condition" was construed to be statement of fact). Restatement (Second) of Torts § 539. This is particularly true where the maker is understood to have special knowledge of facts unknown to the recipient. Restatement (Second) of Torts § 539. In this case, it was reasonable for the plaintiff to infer that the real estate agent knew facts to justify her opinion based upon the fact that her employer, Chestnut Hill, maintained an office at Brook House as an on-site realtor and had been involved in the sale of the units from the time of the complex's original conversion into condominiums. In these

circumstances, we construe the statement made by the defendant Marsh to be a statement of fact.

Marsh and Chestnut Hill argue that, even if Marsh's statements were ones of fact, the claims must fail because the plaintiff has failed to allege facts indicating that they were false when made. See *Morgan* v. *Financial Planning Advisors, Inc.*, 701 F. Supp. 923, 927 (D. Mass. 1988). As proof of this, they point to the plaintiff's allegation that the noise and vibrations did not surface until almost three years after the plaintiff's purchase. Although this is so, we conclude that the plaintiff's allegation that Marsh and Chestnut Hill "were aware of an historical noise and vibration problem in the particular unit being shown to [the plaintiff] at the time [the statements were made,] as well as [in] the building in which the unit exists" was sufficient to challenge the truthfulness of the statements when made. Although the plaintiff does not specifically tie this historical problem to the operation of the air conditioning chiller system, he does allege that this system was inoperative at the time of his purchase of the unit and that he did not experience the noise and vibrations in his unit until it was activated in June, 1990. From these allegations, one could reasonably infer that the noise and vibration problem was related to the air conditioning chiller system. See *Nader* v. *Citron*, 372 Mass. 96, 98 (1977) (in considering a motion to dismiss, the court must consider all the allegations of the plaintiff's complaint as well as any reasonable inferences that can be made therefrom). Further, the realtor's statements imply that she knew of no facts incompatible with the statements made. From the plaintiff's allegations in this action, one may infer that such was not the case when the statement was made. Cf. *Briggs* v. *Carol Cars, Inc.*, 407 Mass. at 396.

Finally, Marsh and Chestnut Hill assert that the statute of limitations for a claim of misrepresentation had lapsed by the time the plaintiff filed suit.[2] The statute of limitations for this type of action is three years. G. L. c. 260, § 2A. The

---

[2]This issue was raised in the lower court but not decided.

plaintiff filed his complaint almost six years after the alleged misrepresentation was made. However, in this type of action, the cause of action does not accrue until the time that the plaintiff learns or reasonably should have learned of the misrepresentation. *Kent* v. *Dupree*, 13 Mass. App. Ct. 44, 47 (1982). In this case, the plaintiff alleges that the noise and vibrations did not surface until June, 1990, when the air conditioning chiller system, which had been in place in his building at the time of purchase but was inoperative, was activated. We conclude that these allegations are sufficient to withstand a motion to dismiss, because the statute was tolled until the plaintiff experienced the noise and vibration in the unit in June, 1990. Since this action was commenced on May 17, 1993, the statute of limitations is not a bar.

2. *Nuisance.* The plaintiff argues that the judge erred in dismissing the nuisance claim against the trustees because he failed to take into account the unique relationship between the property interest possessed by the owner in his own unit and his interest in the common areas and facilities. While the judge was correct in stating that the law of nuisance requires two separate and distinct parcels, one on which a nuisance exists and one on which the occupants are burdened with the nuisance, *Doe* v. *New Bedford Hous. Authy.*, 417 Mass. 273, 288 (1994); *Asiala* v. *Fitchburg*, 24 Mass. App. Ct. 13, 17 (1987), we conclude that the relationship between the unit owner's property interest in his unit and the jointly owned common areas is akin to that of adjacent property owners and a unit owner should be able to maintain a nuisance action against the condominium association for a nuisance on the common areas.

Ownership of a condominium is a dual form of interest in real estate, entitling the owner both to exclusive ownership and possession of his unit and to an undivided interest together with other unit owners in the common areas. *Noble* v. *Murphy*, 34 Mass. App. Ct. 452, 455-456 (1993). G. L. c. 183A, §§ 4 & 5. Subject to the provisions in the master deed and the by-laws of the condominium association, the unit owner has exclusive control over his unit. G. L. c. 183A,

§ 4. The management and control of the common areas, however, is vested in the organization of unit owners. G. L. c. 183A, § 10. Furthermore, where, as here, the organization of unit owners is a trust, the trustees are responsible for conducting all litigation and are subject to suit as to any cause of action involving the common areas. G. L. c. 183A, § 10(*b*) (4). Because a unit owner's control over the common areas is virtually nonexistent, and because the Legislature has provided that suits for any cause of action involving the common areas and facilities should be brought against the trustees of the condominium association without expressly negating the unit owners' right to do so, we conclude that the fact that a unit owner has a property interest both in his unit and in the common areas should not preclude the potential liability of the condominium association for nuisance. Compare *Doe* v. *New Bedford Hous. Authy.*, 417 Mass. at 288-289 (a tenant cannot sue his own landlord for a nuisance on the property that the tenant rents from the landlord). To hold otherwise would leave a unit owner powerless (except to the extent of his ability to influence or persuade the trustees or the condominium membership) to correct a substantial and unreasonable interference with the quiet enjoyment of his property which emanated from a condition in the common areas but affected only his unit. Cf. *Hawkins* v. *Jamaicaway Place Condominium Trust*, 409 Mass. 1005, 1006 (1991) (where owners of unit were not without means to provide own security devices to protect their home from intruders, the condominium association owed no duty of care to unit owner who was injured when she was attacked by intruder who entered through a window of the condominium unit). Other jurisdictions have recognized a condominium association's liability for nuisance to a unit owner. *Baum* v. *Coronado Condominium Assn., Inc.*, 376 So. 2d 914 (Fla. Dist. Ct. App. 1979). *Brooks* v. *Co-Owners of Stones Throw Horizontal Property Regime I*, 315 S.C. 474 (1994). See also *Smith* v. *King's Grant Condominium*, 418 Pa. Super. 260, 270-271 (1992), affd., 537 Pa. 51 (1994).

3. *Breach of fiduciary duty.* The judge dismissed this claim because the breach of duty specifically alleged by the plaintiff was the creation and maintenance of a nuisance by the trustees, for which, he had ruled, the trustees could not be held liable. Since the claim was dismissed on this narrow ground, which we have rejected, we reverse. We resist, as unnecessary to our decision, the trustees' suggestion that we define the duty owed by the trustees to the unit owners. In doing so, we note that we do not have the benefit of the condominium trust agreement, the master deed, or the condominium by-laws in the record presented to us. See *Lilley* v. *Rich*, 27 Mass. App. Ct. 1212 (1989) (duty owed by condominium trustees to unit owners measured by duty defined in condominium trust agreement). See also *Noble* v. *Murphy*, 34 Mass. App. Ct. at 460 n.7.

*Judgment reversed.*

KASS, J. (concurring in part, dissenting in part). I concur with part 2 of the opinion, having to do with the obligation of a unit owners' association of a condominium to abate a nuisance under its control. For that reason I also concur with part 3 of the opinion. I differ, however, with the opinion of the majority that the complaint states a claim for which relief may be granted against Brenda Marsh, the broker who showed the plaintiff unit 312 in the Brook House Condominium, the apartment that he bought, and Marsh's principal, Chestnut Hill Realty Corporation.[1]

It is so well understood that a complaint will be read with utmost generosity in favor of the pleader[2] that one may say,

---

[1]For purposes of convenience, I shall refer to Marsh and Chestnut Hill Realty Corporation collectively as "the broker."

[2]See, e.g., *Charbonnier* v. *Amico*, 367 Mass. 146, 152-153 (1975); *Druker* v. *Roland Wm. Jutras Assocs.*, 370 Mass. 383, 385 (1976); *Balsavich* v. *Local Union 170, Intl. Bhd. of Teamsters*, 371 Mass. 283 (1976); *Nader* v. *Citron*, 372 Mass. 96, 98 (1977); *Wrightson* v. *Spaulding*, 20 Mass. App. Ct. 70, 71-72 (1985); *U.S. Funding, Inc. of Am.* v. *Bank of Boston Corp.*, 28 Mass. App. Ct. 404, 406 (1990).

with but a touch of hyperbole, that a motion to dismiss under Mass.R.Civ.P. 12(b) (6), 365 Mass. 755 (1974), lies only when the plaintiff has somehow managed within the four corners of the complaint to plead himself out of court. McEneaney, the plaintiff, has accomplished that master stroke. His grievance is that the broker misrepresented facts she knew or should have known when in August, 1987, she said that unit 312 was quiet. Yet attached to McEneaney's complaint as an exhibit is a letter from him, dated August, 1990, to the trustees of the Brook House unit owners' association saying:

> "As you are aware, the engine running the air conditioning in C-Building has recently been renovated. From the information I have gathered, the horsepower of the engine has been increased. Whatever the technical reason, there is now a vibration coming through the southwest side of C-Building which is intolerable. At night, probably as a result of increased usage of air conditioning units, the sound and vibrations become increasingly louder."

Thus, in his complaint, McEneaney has told us that for three years his apartment *was* quiet, as the alleged representation of the broker had characterized it, and that only changes in the equipment and a souping up of its horsepower three years later in the summer of 1990 have caused it to be noisy. McEneaney's recitation of the recent equipment changes and resulting noise states specific facts that negate the contrived, nonspecific assertion in count I of the complaint that,

> "[u]pon information and belief, Chestnut Hill and Marsh knew their representations as to the non-existence of notice in Unit 312 were false at the time such representations were made and that they could not be relied upon."

The same kind of foot-in-the-door but nonparticularized allegation was made in count II:

"Based upon the facts as set forth above, Chestnut Hill and Marsh misrepresented the nature of the noise level in Unit 312 to Mr. McEneaney."

That McEneaney alleges the broker "knew or should have known that there had been a historical noise and vibration problem in the . . . area of . . . Unit 312," does not, it seems to me, advance his cause. Such a history would not alter the state of unit 312 in August, 1987, namely, quiet, and does not permit logically the inference that the broker ought to have known that the apartment would be noisy in the future.[3] The stretch that such an inference would involve is best illustrated by the unit's being quiet for the next three years after sale.

As the trial judge wrote in his memorandum of decision allowing the broker's motion to dismiss, "McEneaney has failed to allege facts that would challenge the contemporaneous truth of Ms. Marsh's representations." The claim against the broker is representative of a "round up all the usual suspects and let's see what we can shake out of them" approach to litigation. See *Caron* v. *General Motors Corp.*, 37 Mass. App. Ct. 744, 756 (Brown, J., concurring). We should not allow ourselves to be seduced by it. Routinely, at bar associations and like public occasions, judges lament the high tide of litigation. Then we invite into the courts for further exploration cases that offend common sense. As Walt Kelly once had Pogo say, "We have met the enemy and they is us."

---

[3]Indeed, there is an element of self-contradiction in the complaint. That pleading was filed May 17, 1983. To avoid being barred by the three-year statute of limitations for tort claims, the plaintiff must say the noisy condition first came to his attention no earlier than June, 1990. Yet the broker is supposed to have known in July and August of 1987 that unit 312 would become noisy three years later.