# FREDERICK L. BERNSTEIN *vs*. CHIEF BUILDING INSPECTOR & BUILDING COMMISSIONER OF FALMOUTH & others.[1]

No. 99-P-730.

Suffolk. March 13, 2001. - August 31, 2001.

Present: GREENBERG, BECK, & COWIN, JJ.

*Real Property,* Condominium. *Condominiums,* Development rights. *Zoning,* Special permit, Variance.

A condominium unit owner had standing to appeal a decision of a zoning board of appeal permitting a developer to construct an additional building in the condominium complex, notwithstanding the limits placed by G. L. c. 183A, § 10(*b*)(4), on a condominium unit owner's ability to litigate certain issues. [426-427]

A Land Court judge correctly concluded that a developer's special permit to construct a condominium complex in five phases had not lapsed, absent express language in the permit to the contrary, and despite an extended pause in construction, where the developer anticipated completing the work contemplated in the permit in stages, had begun construction within two years, and a "substantial use" within the meaning of G. L. c. 40A, § 9, par. 13, had commenced. [427-428]

CIVIL ACTION commenced in the Land Court Department on September 17, 1997.

The case was heard by *Mark V. Green*, J., on motions for summary judgment.

*Frederick L. Bernstein*, pro se.

*Patrick M. Butler & Patrick J. Cassidy* for Stuborn Limited Partnership & another.

*Frank K. Duffy, Jr., & Edward J. DeWitt*, for Chief Building Inspector and Building Commissioner of Falmouth & another, submitted a brief.

---

[1]Zoning Board of Appeals of Falmouth; Sippewissett Development Limited Partnership; Intercontinental Developers, Inc.; Cape Codder Enterprises, L.P.; Stuborn Limited Partnership; Shoestring Properties, Inc.; and John Doe, a fictitious name.

GREENBERG, J. The underlying issue in this case is whether, as ruled by a judge of the Land Court, Stuborn Limited Partnership, an assignee of certain condominium development rights (developer), may construct a fifth building more than two years after a special permit has issued. Preliminarily, there is a question whether the plaintiff, as a unit owner, independent of the trustees of the condominium association, has standing to contest the chief building inspector and commissioner's (commissioner) decision under the circumstances presented here. The Land Court found that the plaintiff has standing. The judge entered a partial judgment in the defendants' favor appropriately certified pursuant to Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974). The plaintiff appealed.[2]

On August 28, 1997, the Zoning Board of Appeals of Falmouth (board) issued a decision upholding the finding of the town's commissioner that a special permit to construct "Building Five" of a condominium complex remained valid. The trustees of the Cape Codder Condominium Trust (trustees) filed a complaint pursuant to G. L. c. 40A, § 7, contesting the board's decision.[3] The plaintiff filed a separate complaint appealing the same decision. The Land Court judge ruled against the plaintiff, and this appeal followed.

The question arose in the following manner. The board granted a special permit for the construction of a condominium in five phases on the site of the former Cape Codder Hotel complex. The board found the condominium project consistent with that preexisting, nonconforming use. Under the permit, the

---

[2]The Land Court judge declined to rule on one count of the plaintiff's complaint on the basis that the record before the court was inadequate as to that count. He ruled that this additional count "shall remain for such proceedings as may be appropriate." The Land Court judge only certified the partial judgment that granted the defendants' motion for summary judgment on the first two counts of the plaintiff's original complaint. Those counts pertain to the issues discussed in this opinion.

There were additional motions, orders, and an amendment to the complaint after the entry of the partial judgment from which the appeal was appropriately taken. The plaintiff's efforts to expand the scope of the issues before this court through his brief and by the filing of an amended notice of appeal fail because only the certified partial judgment is before us on this appeal.

[3]The separate appeal by the trustees to the Land Court — which settled — is not the subject of this appeal.

developer would restore the "turn of the century" Cape Codder hotel building and would raze other buildings on the property and replace them with buildings containing residences. As the final phase, a new building, designated on its plans as "Building Five" (building five) could be built. Neither the settlement agreement between the abutters to the property for which the relevant special permit had been issued and the developer — which settlement agreement allowed the issuance of the special permit — nor the permit itself placed any time limitations within which the construction was to be completed. None of the interested parties appealed from the grant of the special permit in 1986.

In 1987 the developer sought and received a modification of the original permit. Amongst other provisions, this modification allowed the developer to raze the original hotel building. Between 1987 and 1989 four buildings, containing twenty units, were built. The condominium master deed was recorded on October 19, 1989. Pursuant to its terms, the developer reserved the right to increase the number of units from twenty to forty-seven, including those contained in proposed building five. The master deed stated that the right to make certain improvements and to construct building five expired in ten years (on October 19, 1999).

In 1990, the developer sought to modify the original permit to revise various design plans and to extend the time for starting construction of building five. After a public hearing, the board issued its decision, ruling on five discrete issues. Because of the impending economic slow-down, among other things, the board acceded to the developer's request to delay construction of the fifth and final phase until after the summer of 1991, possibly to October, 1991. As a basis for the extension, the board found that: "[t]he delay in construction will afford the neighbors an extended break from construction activity, and by virtue of economic and marketing conditions allow the developer to complete the project, including the further planning and erection of the revised building which may be more expensive than the previously proposed structure."

Next the developer, aggrieved by several conditions imposed by the board in granting the modifications, filed an appeal.

However, before the appeal was decided, a judge of the Land Court, with the assent of all parties, remanded the case to the board. After a second public hearing, held on May 5, 1993, the board amended its 1990 decision and granted the developer additional modifications. It incorporated by reference the findings and conditions of the original 1990 decision. However, the board did not set the October, 1991, deadline as a condition of the permit.

In July, 1992, the plaintiff purchased his unit from the owner of record, Sippewissett Development. Neither the plaintiff, the condominium association, nor any of the abutters appealed the board's grant of the modifications to the special permit in 1993.

By 1997, four years after the grant of modifications to the special permit, this developer acquired all of the development rights and prepared to construct building five. The attorney for the trustees requested the commissioner, pursuant to G. L. c. 40A, § 7, to determine that no building permit should issue pursuant to the special permit because the special permit had lapsed. The commissioner determined that there were no current violations of the special permit and declined to grant the trustees any relief. An appeal to the board followed.

The board, in affirming the commissioner's decision, noted that the infrastructure, including the septic system for building five, had been completed in a timely manner and that the trustees were on notice of potential delay because the master deed expressly referenced additional construction. The board found that the trustees could have, but did not, appeal the 1993 decision modifying the special permit, which was duly recorded and remains the "most recent valid decision." The board ruled that there was no condition "in the 1993 decision limiting the time in which the developer had to complete the project."

The board observed that the special permit, as modified in 1993, clearly anticipated future construction. It concluded that "unless a special permit has a condition restricting the time for development, once the developer has activated the special permit it is valid indefinitely." In addition, the board confirmed the commissioner's decision, because there had been "substantial use and/or commencement of construction." It found that the

construction delay was for good cause, noting the "dramatic decline in the economy in the early '90's, particularly the demand for condominium units."

The subsequent appeal by Bernstein was decided by a judge of the Land Court on cross motions for summary judgment. The board took the position that Bernstein lacked standing to pursue this appeal. The judge ruled explicitly on that contention and concluded that Bernstein had standing. He held, in effect, that Bernstein's enforcement request was without merit because the special permit as modified in 1993 was not subject to any deadline. He noted that the October, 1991, "deadline" that the developer proposed was not incorporated as a condition in any special permit. He also ruled that the permit had not expired pursuant to G. L. c. 40A, § 9. He declined to rule on other claims asserted by Bernstein that were moot or not ripe for adjudication.

We agree with the board and the developer that the language of G. L. c. 183A, § 10(b)(4), as inserted by St. 1963, c. 493, § 1, places limits on a unit owner's ability to litigate certain issues. In pertinent part, the statute states that a condominium "association shall have, among its other powers, the following rights and powers: . . . [t]o conduct litigation . . . as to any course of action involving the common areas and utilities." The plaintiff, however, in his complaint, did not assert that type of claim. Rather, he asserts the right independently to litigate issues that affect the use of his condominium. Cf. *Golub* v. *Milpo, Inc.*, 402 Mass. 397, 401-402 (1988) (allowing unit owner to sue developer for leaky condominium roof notwithstanding a release signed by association); *Cignal* v. *Leader Dev. Corp.*, 408 Mass. 212, 217 (1990) (allowing unit owners to sue developer for breach of contract for failure to construct according to specifications); *McEneaney* v. *Chestnut Hill Realty Corp.*, 38 Mass. App. Ct. 573, 577 (1995) (allowing unit owner to sue association over noisy air conditioner in common area as private nuisance).

While it is true that zoning decisions are likely to have some similar impact on a condominium's common areas, this does

not preclude unit owners from protecting their own interests.[4] Our decisions have recognized condominium units and common areas to be adjacent parcels of land. See *McEneaney* v. *Chestnut Hill Realty Corp.*, 38 Mass. App. Ct. at 577. We have indulged in the legal fiction of "joint sovereignty" in condominium ownership. See *39 Joy St. Condominium Assoc.* v. *Board of Appeal of Boston*, 426 Mass. 485, 488 & n.6 (1998) (allowing neighboring unit owners independently to seek and appeal variances). See also *McEneaney* v. *Chestnut Hill Realty Corp.*, 38 Mass. App. Ct. at 577-578 (acknowledging the unit owner's "dual form of interest in real estate, entitling the owner both to exclusive ownership and possession of his unit and to an undivided interest together with other unit owners in the common areas"). Thus, we affirm the Land Court judge's ruling that the plaintiff's status as a unit owner did not bar his challenge of the board's decision.

On the merits, we review whether the special permit as modified in 1993 has lapsed. Ordinarily, a permit may not be warehoused indefinitely. See G. L. c. 40A, § 9 (providing for the lapse of a special permit after two years unless certain conditions are met). However, we agree with the Land Court judge that, where a developer anticipates completing work in stages, has begun construction within two years, and a "substantial use" has commenced, authority to complete the project continues absent express language to the contrary in the permit. The statutory scheme makes provision for such extensions. See G. L. c. 40A, § 9, par. 13 (allowing an extension of a permit where a substantial use has commenced or for "good cause").

The plaintiff relies on *Hunters Brook Realty Corp.* v. *Zoning Bd. of Appeals of Bourne*, 14 Mass. App. Ct. 76, 80-81 (1982), a case involving a variance, for the proposition that a special permit must expire within a specified period of time, not to exceed two years, in the absence of a new notice and hearing. A variance, however, is not analogous to a special permit. Unlike

[4]The language of G. L. c. 40A, § 17, as appearing in St. 1989, c. 649, § 2 (providing that "[a]ny person aggrieved by a decision of the board of appeals . . . whether or not previously a party to the proceeding, . . . may appeal to the land court"), does not preclude an owner from appealing a zoning decision.

a special permit, which is issued for uses "in harmony with the general purpose and intent of the ordinance or by-law," G. L. c. 40A, § 9, par 1, as inserted by St. 1975, c. 808, § 3, a variance is "always in derogation" of a town's zoning system. *Lopes* v. *Board of Appeals of Fairhaven*, 27 Mass. App. Ct. 754, 756 (1989), quoting from *Pendergast* v. *Board of Appeals of Barnstable*, 331 Mass. 555, 557 (1954). Additionally, in *Hunters Brook Realty Corp.* v. *Zoning Bd. of Appeals of Bourne, supra*, construction under the variance had not yet commenced. Here, twenty original residential units have been constructed, and the plaintiff, among other unit owners, is making "substantial use" of the construction thus far completed under the special permit, e.g., the common areas. The last phase of the project began in 1990 with the installation of a septic system designed to serve building five.

A developer's mischief may run rampant absent the imposition of some time limits in the grant of a special permit. However, in the instant case, the plaintiff cannot complain because he failed to appeal the 1993 decision that made no mention of the earlier October, 1991, deadline. In any event, all of the unit owners knew that the developer had reserved construction rights for ten years under the condominium master deed. Because the time for interested parties to appeal the special permit has long expired, we affirm the Land Court judge's finding that the defendants' special permit remains valid, despite the extended pause in construction.[5]

*Partial judgment affirmed.*

---

[5]Although the plaintiff argues to the contrary, the validity of any individual building permit is not properly before us.