Botsford, Margot, J.
The plaintiffs are the owners of a condominium unit at 41 Linnaean Street in Cambridge. The building is a four-stoiy building with multiple condominiums, and is one of two buildings (the other is 43 Linnaean Street) that form part of the Peabody Court Condominium (the condominium). They bring this action for declaratoiy relief against the Trustees of the 41-43 Linnaean Street Condominium Trust (trustees) to challenge the trustees’ interpretation of the trust’s bylaws and the master deed, and in particular to challenge the trustees’ refusal to approve the windows that the plaintiffs wish to install in their condominium unit as replacements for the existing windows.
The parties have filed cross motions for summary judgment. Each side contends that its interpretation of the master deed and bylaws is correct. For the reasons that are discussed below, I conclude that the plaintiffs’ motion should be allowed in part, and the defendants’ denied in part, but that consideration of an additional issue is in order.

Background

The condominium was built in 1922, and originally consisted of apartments; the conversion to a condominium occurred in 1981. The plaintiffs bought their fourth-floor unit in September of 2004. The windows in the plaintiffs’ condominium unit are the original wood windows, installed when the condominium was built. At the time the plaintiffs bought their unit, many of the windows in their unit were in disrepair, and the plaintiffs wanted to replace them. According to the plaintiffs, and not disputed by the trustees, the original type of windows installed in the condominium in 1922 are currently not available in the market.
In February 2005, the plaintiffs purchased new, vinyl windows for their unit. The new windows have white muntins[4] (as do the original windows), have the same number of squares (six over six), and are of the same style (double-hung and casement). However, according to the trustees, the vinyl windows have wider frames and sashes than the original windows and accordingly a noticeably smaller glass area, and the muntins are not and do not look the same as the originals. The plaintiffs presented their new windows to the trustees, but the trustees rejected them; since 2000, the trustees have followed a policy that favors unit owners undertaking to refurbish the original windows rather than replace them, especially with vinyl. It appears that before 2000, the trustees’ policy was different, and a fair number of condominium units have replaced the original windows, some of them using vinyl rather than wood windows.
The plaintiffs had a contractor who specializes in window refurbishment. The contractor provided an estimate for the cost of refurbishing thirteen of the plaintiffs’ fourteen windows — the contractor indicated on his estimate that the fourteenth window, a casement window, needed to be replaced. According to the affidavit of the plaintiff Davilas, the estimated refurbishing cost was over twice as expensive as replacing these thirteen windows with the new windows the plaintiffs had purchased, and custom-made new windows would also be “significantly more expensive than non-custom windows.” (Davilas affidavit, ¶ 11.)[5]
After the trustees declined to approve (grant a waiver for) the plaintiffs’ new windows under Section 9(c) of the master deed, the plaintiffs commenced this action, claiming, inter alia, that the trustees have no authority under the condominium’s master deed or bylaws to require approval of window replacements.

Discussion

There are some governing legal principles that help define the relationship between the owners of a condominium unit and the trustees of the condominium trust or association that both sides in this case accept. These include the following: (1) the owners of a condominium unit are bound by the terms of the master deed and bylaws of the condominium (enforced by the *692 trustees of the condominium), but otherwise the owners are entitled to exercise exclusive control over their unit, see, e.g., McEneaney v. Chestnut Hill Realty Corp., 38 Mass.App.Ct. 573, 577-78 (1995); (2) unless a restriction on use is set forth in the master deed or bylaw, the owners are not bound to abide by the restriction, see Johnson v. Keith, 368 Mass. 316, 320-21 (1975); Noble v. Murphy, 34 Mass.App.Ct. 452, 454 n.4 (1993); and (3) insofar as restrictions on use are concerned, any ambiguity in the meaning or scope of the restriction that is set forth in a master deed or bylaw should be construed in favor of the unit owner’s right to be free of the restriction. See Johnson v. Keith, supra, 368 Mass. at 320.
These principles offer some guidance to the parties’ dispute, but do not resolve it. The question here is not whether the plaintiffs are bound by the terms of the master deed and the bylaws of the condominium trust; they are. Indeed, as persons who bought a unit in the condominium when the master deed and bylaws were already in place, they are bound by the terms of these documents, even if there should be “a certain degree of unreasonableness” to them. Noble v. Murphy, supra, 34 Mass.App.Ct. at 459 (quotation and citation omitted). Rather, the question here is, what does the language of the master deed and bylaws mean?[6]
Two provisions in the master deed are particularly at issue, Sections 9(c) and (d), which provide in pertinent part as follows:
9. Restrictions on Use of Units
The restrictions on the use of the Units are as follows:
(c) In order to preserve the architectural integrity of the building and the Units, without modification, and without limiting the generality thereof, no balcony, awning, screen, antenna, sign, banner or other device, and no exterior change, addition, structure, projection or other feature shall be erected or placed upon or attached to any Unit or any part thereof, no addition to or change or replacement (except, so far as practicable, with identical kind) of any exterior light, door knocker or other exterior hardware, exterior Unit door, or door frames shall be made and no painting or other decoration shall be done on any exterior part or surface of any Unit nor on the interior surface of any window; and
(d) The limitations on use and restrictions set forth in Sections 8 and 9 hereof shall be for the benefit of the owners of the Units and the Trustees of The Peabody Court Condominium Trust, as the persons in charge of the Common elements, shall be enforceable solely by said Trustee(s), and shall, insofar as permitted by law, be perpetual; and to that end, such limitations on use and restrictions may be extended by said Trustees at such time or times and in such manner as permitted or required by law for the continued enforceability thereof. Said restrictions may be waived in specific cases by such Trustees.
As it applies to this case, the language of Section 9(c) is ambiguous. The trustees focus on the language in Section 9(c) that states “. . . no exterior change, addition,... or other feature shall be erected or placed upon or attached to any Unit or any part thereof. . .” In their view, replacing a window is making an “exterior change” that will be “placed upon or attached to” the condominium unit, and therefore is prohibited—unless the trustees should decide, in a particular case, to waive this restriction pursuant to Section 9(d).[7] There is some merit to the argument, because a replacement of windows can lead to a change in the exterior appearance of the building, which presumably affects its architectural integrity. However, the rest of Section 9(c), fairly read, suggests that windows are not intended to be included in the type of change barred by the section. Thus, as the plaintiffs point out, the first part of Section 9(c) focuses on items that physically extend or protrude from the exterior surface of a building, as the examples given in the section’s text suggest — a balcony, awning, screen, antenna, sign, banner. A window, defined in the dictionary as “an opening, especially in the wall of a building for admission of light and air that is usually closed by casements or sashes containing transparent material (as glass) and capable of being opened and shut,”[8] seems different in kind, particularly since the parties agree that windows in a condominium unit are considered part of the unit itself, rather than part of the exterior structure of the building owned in common. (See Complaint, ¶¶34, 35; answer, ¶¶34, 35; see also master deed, exhibit C.) Next in the section comes the general language prohibiting every “external change, addition,” etc., on which the trustees rely, and then Section 9(c) ends with a ban against additions, changes, or replacements of items that are commonly part of an individual condominium unit but present an exterior face: “any exterior light, door knocker or other exterior hardware, exterior Unit door, or door frames.” One would reasonably expect to find windows listed here, if the drafters of Section 9(c) had intended windows to be covered by the section, because windows are also part of the unit but have an exterior face. Windows, however, are not listed. Rather, windows are finally mentioned at the very end of the section, where “painting or other decoration” is prohibited “on the interior surface of any window.” This final reference to the term again supports the view that the omission of windows anywhere above in Section 9(c) was intentional, because it indicates that when the drafters intended to deal with windows in the section, they did so expressly. Cf., e.g., Doe v. Superintendent of Schools of Worcester, 421 Mass. 117, 128 (1995).
That windows are not intended to be included generally in Section 9(c) (i.e., beyond the one reference *693 to painting on the interior of a window surface) is supported by reading Section 9(c) in conjunction with the condominium trust’s bylaws. It appears that the bylaws were executed the same day as the master deed, by the same individuals, and were recorded on the same day as well. Documents that are connected together as part of one transaction should be read together in order to effectuate the intent of the parties. See Chase Commercial Corp. v. Owen, 32 Mass.App.Ct. 248, 250 (1992); Gilmore v. Century Bank and Trust Co., 20 Mass.App.Ct. 49, 56 (1985). See also Chelsea Indus., Inc. v. Florence, 358 Mass. 750, 755 (1970).
Section 5.2 of the bylaws concerns the maintenance and repair of individual condominium units. It provides that each owner of a unit is responsible for all “maintenance, repair and replacement’ of all “utility fixtures” in the unit, “including without limitation, interior finish walls, ceilings and floors; windows and the interior portions of window frames; interior window trim; doors; the interior portions of door frames and interior door trim; . . .” (Bylaws, §5.2.1 [emphasis supplied].) Further, if the unit owner fails to cany out this responsibility, he or she may be subject to the Trustees performing the work, with the cost becoming a personal liability of the unit owner, and a lien on the unit. (Bylaws, §5.2.2.)[9]
Again, this section of the bylaws demonstrates that when the drafters of the governing condominium documents at issue here intended to reference and include windows, they did so explicitly. But more generally, if Section 9(c) of the master deed is interpreted to include the replacement of a window as an “exterior change" subject to its prohibition, a unit owner would appear to find himself or herself faced with conflicting obligations. On the one hand, the unit owner would be barred by Section 9(c) from replacing and thereby making a change in his or her unit’s windows, no matter what the need, without a discretionary waiver from the trustees under Section 9(d), but on the other, may be forced under Section 5.2 of the bylaws to undertake or at least pay for an imposed replacement of a window if the trustees believe the same is necessary to preserve the economic value of the other units or the safety of the unit owners. There is a certain Catch-22 aspect to this situation that is avoided if Section 9(c) is construed to not apply to replacement of condominium unit windows.
Accordingly, I conclude that the language “no exterior change, [or] addition, . . . shall be erected or placed upon or attached to any Unit or any part thereof,” in Section 9(c) does not apply to the replacement of condominium unit windows. This is the interpretation that is most in accord with relevant rules of contract interpretation referred to above (see note 6), and is also consistent with the principle that an ambiguity in a restriction imposed in a master deed should be construed in favor of freedom from the restriction. Johnson v. Keith supra, 368 Mass. at 320.
The determination that Section 9(c) does not apply, however, does not necessarily mean that the plaintiffs are entitled to replace their windows without the need to obtain any approval from the trustees. Section 9(b) of the master deed provides that unit owners may make changes to their units (except for load-bearing walls),
. . . provided, however, that any and all work with respect to the removal and installation of interior non-bearing walls or other improvements shall be done in a good and workmanlike manner, pursuant to a building permit duly issued therefore (if required by law) and pursuant to plans and specifications which have been submitted to and approved by the Trustees .. . which approval shall not be unreasonably withheld or delayed[.]
(Emphasis supplied.) Given that windows are included within and part of a condominium unit, it may be that the quoted language in Section 9(b) should be interpreted to mean that replacement of the windows in a condominium unit, since they represent an improvement to the unit, is subject to the approval of the trustees, “which approval shall not be unreasonably withheld.”
Neither parly has addressed this interpretive question. It seems appropriate to give them an opportunity to do so. Accordingly, counsel will be asked to file a supplemental memorandum on the question of whether Section 9(b) in the master deed applies to the replacement of the windows within an individual condominium unit, and no final order on the cross motions for summary judgment will be entered at this time.

ORDER

For the foregoing reasons, no final order will enter on the parties’ cross motions for summary judgment will enter at the present time. If any party wishes to file a memorandum addressing the meaning of Section 9(b) of the master deed as it may apply to the replacement of the windows in an individual condominium unit, the memorandum is to be filed on or before August 10, 2007.

A muntin is a strip of wood or metal that separates and holds panes of glass in a window.

The trustees do not dispute Paragraph 11 of the Davilas affidavit.

Beyond the principles described above concerning the relationship between a condominium unit owner’s rights and the master deed and bylaws, there are rules of contract interpretation that assist in addressing the meaning of the condominium documents. They include the rule that “the object of the court is to construe the contract as a whole, in a reasonable practical way, consistent with its language, background and purpose,” Vergato v. Commercial Union Insurance Co., 50 Mass.App.Ct. 824, 826 (2001) (quotation and *694 citation omitted); and that in undertaking this interpretive task, the court must “construe all words that are plain and free from ambiguity in their usual and ordinary sense.” Suffolk Construction Co., Inc. v. Lanco Scaffolding Co., Inc., 47 Mass.App.Ct. 726, 729 (1999).

In this case, the trustees did not choose to waive the restriction because they view the vinyl windows proposed by the plaintiffs to be discordant insofar as the architectural and historical integrity of the condominium is concerned.

Merriam Webster’s Collegiate Dictionary (11th ed. 2005).

Section 5.2 of the bylaws reads in pertinent part as follows:
5.2.1. Each Unit Owner shall be responsible for the proper maintenance and repair of his Unit and the maintenance, repair and replacement of utility fixtures therein serving the same, including without limitation, interior finish walls, ceilings andfloors; windows and the interior portions of window frames; interior window trim; doors; the interior portions of door frames and interior door trim; . . . Each Unit Owner shall be responsible for all damages to any and all Units caused by his failure to satisfy his maintenance, repair and/or replacement obligations hereunder.
5.2.2 If the Trustees shall, at any time in their reasonable judgment, determine that the interior of a Unit is in such need of maintenance or repair that the market value of one or more other Units is being adversely effected or that the condition of a unit or any fixtures, furnishing, facility or equipment therein is hazardous to any Unit or the occupants thereof, the Trustees shall... request the Unit Owner to perform the needed maintenance, repair or replacement . . . , and in case such work shall not have been commenced within fifteen days ... of such request and thereafter diligently brought to completion, the Trustees shall be entitled to have the work performed upon and have access to such Unit for such purpose; and the cost of such work as is reasonably necessary therefore shall constitute a lien upon such Unit and the Unit Owner thereof shall be personally liable therefor." (Emphasis supplied.)