Salinger, Kenneth W., J.
The remaining plaintiffs claim that they lost millions of dollars they had loaned to a company called Inofin, Inc., after relying to their detriment on allegedly false representations that Sharkansky & Company LLP made in connection with its audit of Inofin’s 2005 financial statements. Sharkansky is an accounting firm. Defendant Scott Estabrooks is a certified public accountant (CPA) and a partner in Sharkansky. The third amended complaint asserts claims against both Defendants for (1) aiding and abetting securities fraud, (2) violating G.L.c. 93A, (3) engaging in securities fraud in violation of federal, Massachusetts, and Colorado law, (4) intentional fraud, (5) negligent misrepresentation, and (6) civil conspiracy.
Defendants now move for summary judgment in their favor on all claims. In responding to Plaintiffs’ opposition, Defendants also move to strike testimony that Miriam Hollenbeck gave when deposed by the Securities and Exchange Commission regarding In-ofin. The motion to strike is unavailing and must be denied because Ms. Hollenbeck’s testimony is admissible as non-hearsay statements by a party’s employee on a matter within the scope of her employment, pursuant to the legal rule summarized in Mass. Guide to Evid. §801(d)(2)(D). The motion for summary judgment must be allowed in part with respect to Plaintiffs’ claim for negligent misrepresentation because the undisputed facts show that Defendants did not owe any duty of care to Plaintiffs. This motion must be denied with respect to the other claims, however, because they turn on disputed facts. The record evidence would allow a reasonable jury or judge to find at trial that Defendants had intentionally committed, aided, or conspired to help Inofin perpetrate actionable fraud that caused Plaintiffs to lose the money they had loaned to Inofin.
1. Motion to Strike Evidence
Ms. Hollenbeck was subpoenaed to testify by the SEC in connection with its investigation of Inofin, because Hollenbeck was employed by Sharkansky as a certified public accountant and helped conduct its audit of Inofin and related entities. Hollenbeck testified before the SEC under oath in June 2010. During this lawsuit, Hollenbeck was designated by Sharkansky as one of its Rule 30(b)(6) witnesses, and testified in that capacity under oath on behalf of Sharkansky.
During her 2010 testimony before the SEC, Ms. Hollenbeck was asked the following questions and gave the following answers regarding the Inofin financial statements that Sharkansky had been asked to audit.
Q. Do you recall how Inofin intended to use these financial statements?
A. The Massachusetts Banking Commission, they’re required to provide the financial statements to the Commission. And as far as I know, investors who also would request a copy of the financial statements would possibly be looking at the financial statements.
Q. Was there any discussion about the impact your qualified opinion on these two potential readers of the financial statements [sic]?
A. I believe so, but I don’t remember the specifics.
Plaintiffs rely heavily on this testimony in opposing the summary judgment motion, as discussed below.
Defendants’ assertion that Ms. Hollenbeck’s SEC testimony is inadmissible hearsay is without merit. When Ms. Hollenbeck testified under oath before the SEC she was employed by Sharkansky and was testifying about matters within the scope of that employment relationship. As a result, her prior testimony is not hearsay because it is being offered by Plaintiffs in this action against Sharkansky “as an admission by a party opponent” under the principles summarized in Mass. Guide to Evid. §801(d)(2)(D). Commonwealth v. Keo, 467 Mass. 25, 39 & n.20-21 (2014); accord Ruszcyk v. Secretary of Pub. Safety, 401 Mass. 418, 422-23 (1998). Defendants’ assertion that Hollenbeck’s 2010 testimony is inadmissible because she was subpoenaed and testified before the SEC as an individual, and not as an authorized representative of Sharkansky, is without merit. The Supreme Judicial Court has rejected the prior common-law rule that statements are not admissions by a party opponent unless the declarant had “authorization to speak" for the party, and replaced it with the modern rule that statements by a declarant who had “authorization to act’ are admissible if they concern matters within the scope of the declarant’s employment or other authorization to act for the party. See Keo, supra, at 39-40 n.21, quoting Ruszcyk, supra, at 420 n.3. It appears to be undisputed that Hollenbeck was authorized to act on Sharkansky’s behalf in connection with its audit of Inofin’s financial statements. As a result, her testimony regarding that assignment and work is *480 admissible and may be considered in connection with the pending motion for summary judgment.
2. Motion for Summary Judgment
A claim cannot be resolved on a motion for summary judgment where “a reasonable jury could return a verdict for the nonmoving party.” Dennis v. Kaskel, 79 Mass.App.Ct. 736, 741 (2011), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For this reason, in evaluating the motion for summary judgment the Court “must . . . draw all reasonable inferences” from the evidence presented “in favor of the nonmoving party,” as a jury would be free to do at trial. Godfrey v. Globe Newspaper Co., Inc., 457 Mass. 113, 119 (2010). A request for summary judgment must be denied where a claim turns on disputed issues of fact or on disputed inferences from admitted facts. See Molly A. v. Commissioner of Dept. of Mental Retardation, 69 Mass.App.Ct. 267, 284 (2007) (“summary judgment cannot be granted if the evidence properly before the motion judge reveals a genuine issue of disputed material fact”); Flesner v. Technical Communications Corp., 410 Mass. 805, 811-12 (1991) (“Where a jury can draw opposite inferences from the evidence, summary judgment is improper”).
2.1. Claim of Aiding and Abetting Securities Fraud
To succeed on their claim that Sharkansky and Es-tabrooks are liable for aiding and abetting the commission of a securities fraud, Plaintiffs will have to prove at trial that: (1) some other party “committed the relevant tort,” (2) Defendants knew that the other party “was committing the tort,” and (3) Defendants “actively participated in or substantially assisted in [the] commission of the tort.” Go-Best Assets Ltd. v. Citizens Bank of Massachusetts, 463 Mass. 50, 64 (2012).
Defendants are not entitled to summary judgment on the ground that there is no evidence that they had any actual knowledge that Inofin was defrauding new investors or that they substantially assisted Inofin in committing that fraud.
A reasonable jury could infer that Defendants had actual knowledge of and substantially assisted Inofiris alleged fraud. More specifically, if it chose to draw all reasonable inference in Plaintiffs’ favor, a jury could reasonably find that: (1) Sharkansky certified the accuracy of Inofin’s financial statements for 2005, which showed that Inofin had a positive net worth, even though Sharkansky knew that those financial statements were inaccurate and that Inofin actually had a negative net worth; (2) although Sharkansky had been asked to prepare an audit report for submission to the Massachusetts Division of Banks, Defendants knew that Inofin would probably show its audited 2005 financial statements and Sharkansky’s audit report to potential investors, as Ms. Hollenbeck testified before the SEC; (3) Defendants knew that the $13.5 asset shown on Inofin’s balance sheet for notes receivable from related parties was inaccurate—even assuming that it was proper for Inofin to report its financial results on an unconsolidated basis, without including the financial results of its related parties— because Defendants knew that the related parties were losing money and would probably not be able to repay Inofin; (4) Defendants therefore knew that Inofin’s 2005 financial statements were false and misleading, that Inofin actually had a substantially negative net worth, and that Inofin may not be able to survive as a going concern; (5) Inofiris chief financial officer refused to sign a letter, sought by Sharkansky, certifying that he had no knowledge of actual fraud or suspicions of fraud affecting Inofin; (6) Sharkansky concealed this fact, in part through Estabrooks writing and sending an email falsely stating that the CFO had said that he was not aware of any circumstances suggesting that Inofin had engaged in fraud.
“There is no need to prove actual knowledge” through direct evidence; “it may be inferred from the circumstances.” Commonwealth v. Aponte, 71 Mass.App.Ct. 758, 762 (2008). And “the inferences drawn by a jury from the relevant evidence ‘need only be reasonable and possible and need not be necessary or inescapable.’ ” Commonwealth v. Sullivan, 469 Mass. 621, 624 (2014), quoting Commonwealth v. Casale, 381 Mass. 167, 173 (1980).
2.2. Claim under G.L.c. 93A
Since the evidence would support a finding that Defendants aided and abetted fraud by Inofin, as discussed above, it would also support a finding that Defendants engaged in unfair and deceptive acts in violation of G.L.c. 93A. See, e.g., Stolzoff v. Waste Sys. Int'l, Inc., 58 Mass.App.Ct. 747, 765 (2003) (where, as here, the plaintiffs have viable claims for fraud and negligent misrepresentation, their chapter 93A claims based on the same misrepresentations and omissions withstand a motion for summary judgment).
Defendants’ assertion that they cannot be held liable under c. 93A because they had no direct commercial relationship with any of the Plaintiffs is without merit. Plaintiffs can prove that Defendants’ alleged malfeasance took place in a business context, and thus implicates c. 93A, by showing either “that the defendant had a commercial relationship with the plaintiffs or that the defendant’s actions interfered with ‘trade or commerce’ ” in some other way. See First Enterprise, Ltd. v. Cooper, 425 Mass. 344, 347 (1997). “Parties need not be in privity for their actions to come within the reach of c. 93A.” Ciardi v. F. Hoffmann-La Roche, Ltd., 436 Mass. 53, 60 (2002), quoting Kattar v. Demoulas, 433 Mass. 1, 14-15 (2000). For example, knowingly or recklessly conveying false information in order to help a client bring about a commercial transaction with a third party is a violation of c. 93A. See, e.g., Kirkland Const. Co. v. James, 39 Mass.App.Ct. 559, 563-64 (1995) (reversing dismissal of 93A claim against lawyers who conveyed alleged misrepresentation by client and thereby allegedly induced plaintiff to contract with client).
*481 As discussed above, Ms. Hollenbeck’s testimony to the SEC would support a reasonable inference that Defendants anticipated that investors would rely upon the 2005 financial statements that Sharkansky certified as accurate. Indeed, under the circumstances of this case, such an inference may be permissible even without that testimony. The Appeals Court has observed “that an accounting firm that, in its role as auditor, falsely certifies a companjf s annual report as being free from material misstatement has reason to expect at the time it so certifies that its statement will be relied upon by potential investors!.]” Reisman v. KPMG Peat Marwick LLP, 57 Mass.App.Ct. 100, 110 (2003). The same is true of an accounting firm that, like Sharkansky, is alleged to have falsely certified that a company’s financial statements fairly present the company’s financial position.
2.3. Securities Fraud Claim
Federal securities laws make it illegal “for any person, directly or indirectly,” to engage in any kind of “fraud or deceit... in connection with the purchase or sale of any security.” 17C.F.R. §240.10b-5, accord 15U.S.C. §78j(b).
An accounting firm is liable for securities fraud under federal law if it knowingly issues a false audit report, in which it certifies as accurate financial statements that it knows are inaccurate and misleading, with the expectation that the false audit report and misleading financial statements will be provided to potential investors. See In re Learnout & Hauspie Securities Litigation, 230 F.Sup.2d 152, 163-68 (D.Mass. 2002) (Saris, J.).
For the reasons discussed above, the record evidence would support a jury finding that Defendants made fraudulent statements in connection with the sale of notes by Inofin, and thus would support a finding that they violated federal securities law. As a result, Defendants are not entitled to summary judgment on the securities law claim, whether or not a reasonable jury could also find that Defendants violated Massachusetts and Colorado securities laws.
2.4. Intentional Fraud Claim
To recover on their common-law claim for fraud, Plaintiffs will have to “prove that the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to [her] damage.” Masingill v. EMC Corp., 449 Mass. 532, 540 (2007), quoting Kilroy v. Barron, 326 Mass. 464, 465 (1950). However, Plaintiffs are “not required to show that [Defendants’] misstatements were made with the specific purpose of inducing [Plaintiffs’] reliance. They could also satisfy their burden by showing, as they did, that they were among those whom [Defendants] had reason to expect would rely upon [their] statements.” Reisman, 57 Mass.App.Ct. at 110.
Defendants are not entitled to summary judgment on this claim because a reasonable jury could find, as discussed above, that Defendants falsely certified that Inofin’s 2005 financial statements fairly represented the company’s financial condition, that Defendants knew their statements were false, and that when they issued Sharkansky’s audit report they had reason to inspect that investors like the Plaintiffs would rely upon it.
Although the statements in the audit report are in the form of opinions, that does not automatically insulate Defendants from liability for fraud. It is true that, as a general matter, “[a]n action for deceit will not lie for statements that are ‘merely a matter of opinion, estimate, or judgment.’ ” Maffei v. Roman Catholic Archbishop of Boston, 449 Mass. 235, 252 (2007), quoting Powell v. Rasmussen, 355 Mass. 117, 118 (1969), and Chatham Furnace Co. v. Moffatt, 147 Mass. 403, 404 (1888). “In some circumstances, however, a statement that in form is one of opinion may constitute a statement of fact if it may reasonably be understood by the recipient as implying that there are facts to justify the opinion or at least that there are no facts that are incompatible with it.” McEneaney v. Chestnut Hill Realty Corp., 38 Mass.App.Ct. 573, 575 (1995) (statement that condominium was quiet was statement of fact, not opinion); accord, Briggs v. Carol Cars, Inc., 407 Mass. 391, 396 (1990) (statement by auto dealer that car was in good condition was statement of fact, not opinion); Restatement (Second) of Torts §539 (1977). ‘This is particularly true where the maker is understood to have special knowledge of facts unknown to the recipient.” McEneaney, supra. Thus, “a statement of opinion may be actionable where the speaker possesses superior knowledge concerning the subject matter to which the misrepresentations relate[.]” Stolzoff, 58 Mass.App.Ct. at 760; accord, Restatement (Second) ofTorts, §542(a) (1977). The representations in Sharkansky’s audit letter can fairly be understood as representing that (i) Sharkansky, as Inofin’s auditor, had special knowledge about Inofiris finances that was not available to potential investors like Plaintiffs, and (ii) the underlying facts regarding Inofiris financial situation were consistent with Sharkansky’s representation that the financial statements were accurate. These alleged misrepresentations can support a finding at trial that Sharkansky committed an intentional fraud, and was not merely stating its opinion.
Similarly, the fact that Defendants did not communicate their alleged misrepresentations directly to any of the Plaintiffs does not insulate them from liability for fraud. See Cahaly v. Benistar Property Exchange Trust Co., Inc., 68 Mass.App.Ct. 668, 681 (2007), accord, Restatement (Second) of Torts §533 (1977) (“The maker of a fraudulent misrepresentation is subject to liability for pecuniary loss to another who acts in justifiable reliance upon it if the misrepresentation, although not made directly to the other, is made to a third person and the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other, and that it will influence his conduct in the transaction or type of transaction involved”).
*482 2.5.Negligent Misrepresentation Claim
In contrast to the other claims asserted by Plaintiffs in this action—which allege that Defendants engaged in, aided or abetted, or conspired to carry intentional fraud—Count V of the third amended complaint claims in the alternative that Defendants negligently made misrepresentations in Sharkansky’s audit letter.
Defendants are entitled to judgment in their favor on this claim as a matter of law because the undisputed facts make clear that Defendants did not owe any duty of care to any of the Plaintiffs. “The existence of a duty of care is a question of law and, therefore, is an appropriate subject for summary judgment... If a defendant does not owe a legal duty to a plaintiff, then there can be no actionable negligence.” Lev v. Beverly Enterprises-Massachusetts, Inc., 457 Mass. 234, 240 (2010).
Under Massachusetts law, an accountant that issues an audit report concerning a company’s financial statements has a duty of care not to negligently supply or communicate false information, but owes that duty only to a relatively limited set of people. See Nycal Corp. v. KPMG Peat Marwick LLP, 426 Mass. 491, 493-99 (1998). An auditor owes a duty of care to third parties, such as lenders to or other investors in the company whose finances are being audited, only to the extent that the accountant has both (i) “actual knowledge” that the audit report will be provided, by the auditor or company being audited, to a “limited—though unnamed—group of potential [third parties] that will rely upon the [report],” and (ii) “actual knowledge of the particular financial transaction that such information is designed to influence.” Id. at 498, quoting First Nat’l Bank of Commerce v. Monco Agency, Inc., 911 F.2d 1053, 1062 (5th Cir. 1990). “Massachusetts law does not protect every reasonably foreseeable user of an inaccurate audit report.” Id. at 494. To the contrary, an auditor owes “a duty of care only in circumstances in which the” auditor “was manifestly aware of the use to which the information” conveyed by the audit report “was to be put and intended to supply it for that purpose.” Id. at 497, quoting Restatement (Second) of Torts, §552, comment a, at 128 (1977). “It is not enough that the” auditor “merely knows of the ever-present possibility of repetition to anyone, and the possibility of action in reliance upon it, on the part of anyone to whom it may be repeated.” Id., quoting id., comment h, at 133.
Construing the record evidence in the light most favorable to Plaintiffs, as a jury could choose to do at trial, the evidence would not support any finding that Defendants had actual knowledge of any particular financial transaction contemplated between Inofin and lenders like the Plaintiffs. Defendants are therefore entitled to summary judgment in their favor on the claim of negligent misrepresentation. See Nycal, 426 Mass. 499-500 (affirming summary judgment in auditor’s favor on this ground). The Court agrees with Plaintiffs that the jury could find that that Defendants understood that potential investors in Inofin were likely to see the audit report, at least if they asked Inofin for it, even though Sharkansky had been hired to conduct an audit for the purpose of allowing Inofin to submit audited financial statements to the Division of Banks. But under Nycal that is not enough to give rise to a legally enforceable duty of care. Accountants who audit a company’s financial statements may not “be held liable to any person whom the accountant could reasonably have foreseen would obtain and rely on the accountant’s opinion, including known and unknown investors” who may engage in unspecified future transactions without the accountant’s knowledge. Id. at493. Defendants owed no duty of care to Plaintiffs because there is no evidence that they prepared Sharkansky’s audit report “for the purpose of assisting” potential future investors in Inofin “in any particular transaction.” Id. at 499.
2.6. Civil Conspiracy Claim
To succeed on their claim for conspiracy, Plaintiffs will have to prove at trial that Defendants acted together with Inofin either (1) to exercise some power of coercion over the plaintiff that they would not have had if they had acted independently, or (2) pursuant to “a common plan to commit a tortious act.” Kurker v. Hill, 44 Mass.App.Ct. 184, 188-89 (1998); accord Aetna Cas. Sur. Co. v. P&B Autobody, 43 F.3d 1546, 1563-64 (1st Cir. 1994) (applying Massachusetts law). Plaintiffs allege the second kind of civil conspiracy, involving a purportedly tortious “common plan.” With respect to second kind of civil conspiracy, “the plaintiffs must show an underlying tortious act in which two or more persons acted in concert and in furtherance of a common design or agreement.” Bartle v. Berry, 80 Mass.App.Ct. 372, 383-84, rev. denied, 460 Mass. 1116 (2011). Thus, “[k]ey to this cause of action is a defendant’s substantial assistance, with the knowledge that such assistance is contributing to a common tortious plan.” Kurker, supra, at 189.
Defendants are not entitled to summary judgment on this claim because a reasonable jury could find that: (i) Estabrook, acting on behalf of Sharkansky, falsely asserted that Inofin’s CFO had said that he was not aware of any circumstances suggesting that Inofin had engaged in fraud; and (ii) this evidence supports the inference that Defendants were acting in concert with Inofin to help it conceal evidence of fraud from potential investors.
2.7. Statute of Limitations
This action was filed on June 5, 2013, in Plymouth Superior Court, and subsequently transferred to this session in Suffolk Superior Court. Plaintiffs argue that Counts I, IV, V, and VI are time barred because Plaintiffs should have known that Inofin was having financial difficulty by looking at its 2005 financial statements, and should have known that Inofin was engaged in fraud no later than August 2009. This argnment is without merit.
“[L]imitations periods in Massachusetts run from the time a plaintiff discovers, or reasonably should have discovered, the underlying harm . . . for which *483 relief is sought,” and has reason to believe that the harm was caused by the defendant. Crocker v. Townsend Oil Co., 464 Mass. 1, 8 (2012); accord Doe v. Harbor Schools, Inc., 446 Mass. 245, 256 (2006). Thus, Plaintiffs’ claims that Defendants engaged or participated in fraud did not accrue, and thus the statutoiy limitations period did not start to run, until Plaintiffs “leam[ed] or reasonably should have learned of the misrepresentation(s)” by Defendants, that Defendants had aided or abetted fraud by Inofin, or that Defendants had conspired with Inofin to help conceal its financial condition and alleged fraud. See McEneaney, 38 Mass.App.Ct. at 577; accord Friedman v. Jablonski, 371 Mass. 482, 484-86 (1976).
The question of when the limitations period or periods began to run turns on disputed issues of material fact regarding what Plaintiffs knew or should have known about malfeasance on the part of Defendants, which is not the same thing as harboring suspicions that Inofin may have been concealing material information about the nature of its business and its finances. Cf. Taygeta Corp. v. Varian Assocs., Inc., 436 Mass. 217, 228 (2002) (statute of limitations does not begin to run merely because party “harbored suspicions” of wrongdoing). This issue will have to be resolved at trial.
ORDER
Defendants’ motion for summary judgment is ALLOWED IN PARTwith respect to the claim for negligent misrepresentation in Count V of the third amended complaint, and DENIED IN PART with respect to all other claims. Defendants’ motion to strike certain prior testimony by Miriam Hollenbeck is DENIED. The parties’ motions for leave to file memoranda of law in excess of twenty pages are both ALLOWED.
A final pre-trial conference will be held on July 27, 2016, at 2:00 p.m.